1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF CALIFORNIA

7

8  MICHAEL NEVEAU,                )  1:04-cv-06490  OWW LJO
                                  )
9              Plaintiff,         )  MEMORANDUM DECISION AND
                                  )  ORDER RE DEFENDANTS'
10      v.                        )
                                  )  (1) MOTION TO DISMISS
11 CITY OF FRESNO, a municipality; )  PURSUANT TO FED. R. CIV. P.
   JERRY DYER, individually;      )  12(b)(6);
12 MICHAEL GUTHRIE, individually; )
   GREG GARNER, individually;     )  (2) MOTION FOR A MORE
13 DARREL FIFIELD, individually;  )  DEFINITE STATEMENT PURSUANT
   MARTY WEST, individually;      )  TO FED. R. CIV. P. 12(e);
14 ROGER ENMARK, individually; and )  AND
   DOES 1 through 10,             )
15                                )  (3) MOTION TO STRIKE
                                  )  PORTIONS OF THE SECOND
16           Defendants.          )  AMENDED COMPLAINT PURSUANT
                                  )  TO FED. R. CIV. P. 12(f).
17 _____)

18

19

20              I.    INTRODUCTION

21

22      This is a civil rights action by a City of Fresno police

23 officer against the City of Fresno ("CITY") and several

24 individual members of the City of Fresno Police Department.

25 Michael Neveu ("Plaintiff") brings a civil rights claim under 42

26 U.S.C. § 1983 and under two California state "whistleblower"

27 statutes.  Defendants CITY OF FRESNO, JERRY DYER, MICHAEL

28 GUTHRIE, GREG GARNER, DARREL FIFIELD, MARTY WEST, and ROGER

                              1

ENMARK ("Defendants") move to dismiss Plaintiff's Second Amended Complaint.  (Doc. 33, Def.'s Mem.).  Plaintiff opposes the motion.  (Doc. 27, Pl.'s Opp.).

## II.   PROCEDURAL HISTORY

Plaintiff filed his original Complaint on November 11, 2004.[1]  (Doc. 1, Compl.).  Plaintiff filed a First Amended Complaint against the same defendants on December 17, 2004. (Doc. 19, First Am. Compl.).  The defendants named in the First Amended Complaint moved to dismiss on January 18, 2005.  (Doc. 20, Def.'s First Mot.).  Plaintiff stipulated to file a Second Amended Complaint on January 28, 2005 (Doc. 22), and filed a Second Amended Complaint on March 4, 2005.  (Doc. 23, Second Am. Compl.).  The Second Amended Complaint is the operative complaint and it is this complaint that the Defendants now seek to dismiss. (*See* Doc. 33, Def.'s Mem.).[2]

Plaintiff opposes Defendants' Motion.  (Doc. 27, Pl.'s Opp, filed March 15, 2005).  Defendants replied.  (Doc. 28, Def.'s Reply).  Oral argument was heard on May 23, 2005.  Michael A. Morguess, Esq., appeared on behalf of Plaintiff.  Joseph D.

---

[1] The defendants named in the original Complaint were: City of Fresno; Fresno Police Department; Jerry Dyer, Darrel Fifield; Marty West; Dennis Montejano; John Fries; Roger Enmark; Greg Garner; Fremen Hunter; Michael Guthrie; and Keith Foster.

[2] Defendants filed their original Motion to Dismiss and Memorandum in Support on March 25, 2005.  (*See* Docs. 24, 25). Due to formatting problems, Defendants refiled their supporting memorandum on May 12, 2005.  (Doc. 33).  All citations will be to the corrected document (i.e., Doc. 33).

Rubin, Esq., appeared on behalf of Defendants.

### III.    <u>SUMMARY OF PLEADINGS</u>

This civil rights action is brought by a Fresno City police officer against the City of Fresno, the Fresno Police Chief, and five individual Fresno City pPolice officers.  Plaintiff brings his § 1983 claim based on an alleged violation of his First Amendment right to freedom of expression.  Plaintiff claims he was retaliated against for reporting to his superiors a number of incidents of sexual harassment, racial discrimination, and cheating on police department exams.  The allegations in the complaint are taken as true for the purpose of this motion to dismiss.

Plaintiff is and was at all relevant times a Fresno City police officer and has worked as a police officer for Fresno since February 1995.  (Doc. 1, Compl. ¶¶ 3, 11).

Defendant JERRY DYER is and was during all relevant times the Chief of Police of the City of Fresno.  Defendant ROGER ENMARK was at all relevant times Captain and Deputy Chief of the Fresno Police Department.  Defendant DARREL FIFIELD was at all relevant times Deputy Chief for the Fresno Police Department. Defendant MICHAEL GUTHRIE was at all relevant times a Lieutenant for the Department.  Defendants MARTY WEST and GREG GARNER were at all relevant times Captains for the Department.  (*Id*. at ¶¶ 4-8).

Plaintiff alleges that Defendants retaliated against him for having reported sexual misconduct and racial discrimination to

**3**

the Internal Affairs and Human Resources Departments of the Fresno Police Department, and for having testified at an investigatory hearing that cheating was occurring on Fresno Police Department promotional exams.  Plaintiff alleges two adverse employment actions.  The first is that from June 1997 through December 2002, Defendants failed to promote him despite his high qualifications.  The second is that, in March 2004, Defendants placed Plaintiff on administrative leave and required Plaintiff to undergo psychological examinations to determine his fitness for duty.  Despite the recommendations of three psychologists that he was fit for duty, Defendants refused to reinstate him to duty in July 2004.[3]

Plaintiff began working for the Fresno Police Department in 1995.  (Doc. 1, Second Am. Compl. ¶ 11).  Plaintiff alleges that he "has never scored anything below 'exceeds expectations' on [his] evaluations...."  (*Id*. at ¶ 13).  Plaintiff alleges that he "has had only one incident of discipline in his personnel record spanning his career."  (*Id*. at ¶ 14).

Plaintiff asserts he was retaliated against for four protected First Amendment activities.  First, Plaintiff reported to Police Department Internal Affairs Investigators alleged sexual misconduct by a Richard Mata, who was a police department official who was "suspended due to allegations of sexual molestation" and was "investigated for sexual intimacy and improper behavior towards a teenage girl."  (*Id*. at ¶ 16).  On or about July 16, 1996, Plaintiff was transferred from patrol to the

---

[3] Plaintiff has since been reinstated to duty.

**4**

post of "Explorer Post Advisor," the position from which Richard

Mata had been suspended.  Plaintiff alleges that unidentified

Internal Affairs investigators instructed him to report directly

to them any additional information relating to Richard Mata.  In

July 1996, Plaintiff learned of "administrative improprieties

that appeared designed to foster opportunities for further sex

crimes" and reported these in writing to Internal Affairs.  (*Id.*

at ¶¶ 21, 23).  In or around August 1996, after he submitted the

report, Defendant WEST "ordered [Plaintiff] not to put any

information he obtained regarding the Mata allegations in

writing, and to only verbally report it to [Plaintiff's immediate

supervisors]."  (*Id.* at ¶ 27).  According to Plaintiff, Internal

Affairs had instructed him not to report any information

regarding Mata to his immediate supervisors, even if they

instructed him to do so.  Plaintiff "refused to follow WEST'S

order and reiterated that he was going to do exactly as Internal

Affairs and Chief Winchester ordered."  (*Id.* at ¶ 28).

Second, Plaintiff alleges that "[o]n or around December 23,

1996, [Plaintiff] documented and reported to [his immediate

supervisors] racial harassment of Southeast Asian Explorers by

Police Activity League volunteers...."  (*Id.* at ¶ 29).  One of

Plaintiff's immediate supervisors (not a named defendant) advised

him that "Plaintiff should not have documented the racial

harassment because it caused staff at the Police Activity league

to become upset, including retired Deputy Chief Lee Piscola, and

that 'pissing off a retired Chief is a bad career move.'"  (*Id.*).

Third, Plaintiff alleges that "[o]n or around December,

1996, [Plaintiff] submitted an extensive end of the year report

**5**

documenting potentially embarrassing or troubling incidents involving [his immediate supervisors], including the 'banking' of overtime hours, which were unlawfully denied to [Plaintiff]." (*Id.* at ¶ 30).  Furthermore, Plaintiff alleges that Defendant WEST prevented the report from reaching Chief Winchester's office.  (*Id.*).

Fourth, Plaintiff alleges that in or about March 2002, he testified at an administrative hearing that cheating occurred on Department promotional exams.  On or around March 2001, a new promotional testing system for the promotion to the rank of Sergeant was implemented by Chief DYER.  (*Id.* at ¶¶ 32-34). According to Plaintiff, the system was created at the request of Defendants GARNER AND ENMARK.  However, after the new system was implemented, some of the candidates complained that the system was "tainted and therefore inaccurate."  (*Id.* at ¶ 34).  The complaints resulted in a hearing that took place before the Civil Service Commission in February/March 2002.  (*Id.*).  Plaintiff he informed attorneys handling the hearing "that some promotional candidates were unlawfully given the answers prior to taking the...promotional exam."  The day after Plaintiff reported this information to the attorneys, Defendant GARNER "brought [Plaintiff] into his office, confronted [Plaintiff] in a hostile manner and stated words to the effect that 'Yesterday I spent the better part of the afternoon on the stand getting my [a**] chewed off and I only kept wondering one thing--why your name had come up as a witness."  (*Id.* at ¶ 36).  Moreover, Plaintiff alleges that "[i]n an attempt to discredit NEVEU's testimony, Captain GARNER advised attorneys handling the hearing that NEVEU was a

**6**

'crack pot,' 'screwball,' and that he had 'ethical problems.'"
(*Id.* at ¶ 37).  On or about March 12, 2002, Plaintiff, as well as
his wife, testified before the hearing "as to the improprieties
and outright cheating on in the testing process."  (*Id.* at ¶ 38).

Plaintiff alleges these activities are protected First
Amendment activities and that Defendants retaliated against him
for engaging in these activities.  Plaintiff alleges two separate
adverse employment actions.  First, he alleges that from
approximately June 1997 and December 2002, Defendants WEST,
FIFIELD, GUTHRIE, and GARNER failed to promote Plaintiff.  (*Id.*
at ¶ 41).  Plaintiff claims that someone informed him that "at
staff meetings, WEST, FIFIELD, GUTHRIE, and GARNER always
disapproved of any promotion or selection of NEVEU to...[a]
special unit, despite NEVEU's record and commendations."  (*Id.*).
Furthermore, Plaintiff alleges that these Defendants denied the
promotions because of reporting the Mata allegations, the alleged
racial harassment, the "banking" of overtime hours, and
testifying before the Civil Service Commission.  (*Id.*).  Finally,
Plaintiff claims that on or about July 25, 2002, the sergeants
promotion list containing Plaintiff's name was "killed" before
reaching Plaintiff's name in retaliation for testifying before
the Civil Service Commission.  This allegation is not related to
any particular defendant, although Plaintiff alleges in the next
paragraph that he "was further informed that Captain WEST 'and
that group' had done similar 'black listing' to other officers
who spoke up."  (*Id.* at ¶ 43).

Second, Plaintiff alleges that on March 1, 2004, Defendants
DYER and ENMARK, with the assistance of GUTHRIE, placed him on

**7**

administrative leave pending a fitness for duty examination. (*Id*. at ¶ 45).  Plaintiff alleges that DYER, ENMARK, and GUTHRIE placed him on administrative leave "for engaging in the aforementioned protected activities."  (*Id*. at ¶ 47).  Plaintiff was subsequently examined by three psychologists who declared him fit for duty.  (*Id*. at ¶ 49).  Plaintiff alleges that "[o]n or around July 6, 2004, Chief DYER and Deputy Chief ENMARK refused to reinstate [him]."  (*Id*. at ¶ 50).

On November 1, 2004, the same date that the original Complaint in this action was filed, Plaintiff filed a government tort claim pursuant to the California Tort Claims Act (Cal. Gov. Code §§ 910 *et seq*.).  Plaintiff received a response dated December 13, 2004, which stated that any causes of action accruing before November 1, 2003, were not presented within one year after the incident.  (*Id*. at ¶ 51).  Plaintiff interpreted this response as a rejection of his claim.  (*Id*.).

## IV.   **LEGAL STANDARDS**

### A.   **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).**

Fed. R. Civ. P. 12(b)(6) allows a defendant to attack a complaint for failure to state a claim upon which relief can be granted.  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is disfavored and rarely granted: "[a] complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).  In deciding whether to

grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

"The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).  For example, matters of public record may be considered under Fed. R. Civ. P. 201, including pleadings, orders and other papers filed with the court or records of administrative bodies. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

"Where the facts and dates alleged in a complaint demonstrate that the complaint is barred by the statute of limitations, a Federal Rule of Civil Procedure 12(b)(6) motion should be granted." *Ritchie v. United States*, 210 F. Supp. 2d 1120, 1123 (N.D. Cal. 2002).  There is no requirement, however, that affirmative defenses, including statutes of limitation, appear on the face of the complaint. *Hyatt Chalet Motels, Inc. v. Carpenters Local 1065*, 430 F.2d 1119, 1120 (9th Cir. 1970). "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the

complaint, read with the required liberality, would not permit

the plaintiff to prove that the statute was tolled." *Jablon v.*

*Dean Witter & Co.*, 614 F.2d 677, 682 (1980); *see also TwoRivers*,

174 F.3d at 991.


**B.** **Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e).**

A motion for a more definite statement pursuant to Fed. R.

Civ. P. 12(e) attacks the unintelligibility of the complaint, not

simply the mere lack of detail, and is only proper when a party

is unable to determine how to frame a response to the issues

raised by the complaint.  A court will deny the motion where the

complaint is specific enough to apprise the defendant of the

substance of the claim being asserted. *Bureerong v. Uvawas*,

922 F. Supp. 1450, 1461 (C.D. Cal. 1996); *see also Famolare, Inc.*

*v. Edison Bros. Stores*, Inc., 525 F. Supp. 940, 949 (E.D. Cal.

1981) (finding a Rule 12(e) motion proper "only where the

complaint is so indefinite that the defendant cannot ascertain

the nature of the claim being asserted").  A motion for a more

definite statement is proper only where the complaint is "so

vague or ambiguous that the opposing party cannot respond, even

with a simple denial, in good faith or without prejudice to

himself." *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D.

575, 578 (N.D. Cal. 1999) (internal quotations and citation

omitted); *see also Sagan v. Apple Computer Inc.*, 874 F. Supp.

1072, 1077 (C.D. Cal. 1994) (citing *Van Dyke Ford, Inc. v. Ford*,

399 F. Supp. 277, 284 (E.D. Wis. 1975)) ("A Rule 12(e) motion is

more likely to be granted where the complaint is so general that

**10**

ambiguity arises in determining the nature of the claim or the parties against whom it is being made."); *Boxall v. Sequoia Union High Sch. Dist.*, 464 F. Supp. 1104, 1114 (N.D. Cal. 1979) (finding a motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading).

"Rule 12(e) is designed to strike an unintelligibility rather than want of detail.... A motion for a more definite statement should not be used to test an opponent's case by requiring him to allege certain facts or retreat from his allegations." *Palm Springs Med. Clinic, Inc. v. Desert Hosp.*, 628 F. Supp. 454, 464-65 (C.D. Cal. 1986) (quoting *Juneau Square Corp. v. First Wis. Nat'l Bank*, 60 F.R.D. 46, 48 (E. D. Wis. 1973)). A Rule 12(e) motion "is likely to be denied where the substance of the claim has been alleged, even though some of the details are omitted." *Sagan*, 874 F. Supp. at 1077 (citing *Boxall*, 464 F. Supp. at 1113-14).

This liberal standard of pleading is consistent with Fed. R. Civ. P. 8(a)(2) which allows pleadings that contain a "short and plain statement of the claim." Both rules assume that the parties will familiarize themselves with the claims and ultimate facts through the discovery process. *See Sagan*, 874 F. Supp. at 1077 ("Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules."). If the detail sought by a motion for a more definite statement is obtainable through discovery, the motion should be denied. *See McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996) (granting 12(e) motion where

complaint "does not provide defendants with a fair opportunity to frame a responsive pleading"); *see also Sagan*, 874 F. Supp. at 1077 ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted."); *Beery v. Hitachi Home Elec. (Amer.), Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993) (finding motion for a more definite statement should be denied if the detail sought is obtainable through discovery); *Federal Savings and Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1060 (N.D. Cal. 1988) (finding that if plaintiff's complaint meets the notice requirements of Fed. R. Civ. P. 8, and defendants are provided with a sufficient basis to respond, the proper avenue for eliciting additional detail is through discovery); *Famolare, Inc. v. Edison Brothers Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981) ("A motion for a more definite statement should not be granted unless the defendant cannot frame a responsive pleading."); *CMAX, Inc. v. Hall*, 290 F.2d 736, 738 (9th Cir. 1961).

###    C.    **Motion to Strike Pursuant to Fed. R. Civ. P. 12(f).**

Fed. R. Civ. P. 12(f) provides that "redundant, immaterial, impertinent, or scandalous matters" may be "stricken from any pleading." Fed. R. Civ. P. 12(f). "[O]nly pleadings are subject to motions to strike." *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

Motions to strike are disfavored and infrequently granted. *See Pease & Curran Ref., Inc. v. Spectrolab, Inc.*, 744 F. Supp. 945, 947 (C.D. Cal. 1990), abrogated on other grounds by *Stanton Road Ass'n v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir. 1993).

"[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (citation omitted).

### D.   **42 U.S.C. § 1983**

"Section 1983 provides for liability against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."[4] *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983).

//

//

//

---

[4] Specifically, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

13

### 1. Suits Against Local Governments: The *Monell* Doctrine.

Local governments are "persons" subject to suit for "constitutional tort[s]" under 42 U.S.C. § 1983.[5] *Haugen v. Brosseau*, 339 F.3d 857, 874 (9th Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n. 55 (1978)). "[T]he legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies." *Monell*, 436 U.S. at 690. Local governments can be sued for monetary, declaratory, or injunctive relief where such suits arise out of unconstitutional actions that implement or execute a "policy statement, ordinance, or decision officially adopted and promulgated by that body's officers...." *Id.* 690-1. If no official policy exists, "customs and usages" may fulfill this element of a § 1983 claim against a local government. *Id.*

A local government's liability is limited, however. Although a local government can be held liable for its official policies or customs, it will not be held liable for an employee's actions outside of the scope of these policies or customs. "A municipality cannot be held liable solely because it employs a

_____

[5] "There is certainly no constitutional impediment to municipal liability. 'The Tenth Amendment's reservation of nondelegated powers to the States is not implicated by a federal-court judgment enforcing the express prohibitions of unlawful state conduct enacted by the Fourteenth Amendment.'" *Monell*, 436 U.S. 691 (quoting *Milliken v. Bradley*, 433 U.S. 267, 291 (1977)). There is no "basis for concluding that the Eleventh Amendment is a bar to municipal liability." *Id.* (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976); *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890)).

tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.  "A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its law-makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.

To prevail on a § 1983 complaint against a local government under *Monell*, a plaintiff must satisfy a three-part test:

    (1)   The local government official(s) must have intentionally violated the plaintiff's constitutional rights;

    (2)   The violation must be a part of policy or custom and may not be an isolated incident; and

    (3)   A nexus must link the specific policy or custom to the plaintiff's injury.

*See Monell*, 436 U.S. at 690-92.


## 2.   Suits Against Governmental Officials

### (a)   Official-Capacity Suits

"[Section] 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002) (citing *Ky. v. Graham*, 473 U.S. 159, 165-66 (1985)); *see also Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997)

(finding that "a suit against a state official in his official capacity is no different from a suit against the [official's office or the] State itself") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). "As the Supreme Court has stated, 'official-capacity suits...generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 524 n.3 (9th Cir. 1999) (quoting *Graham*, 473 U.S. at 165). "'As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.'" *Ruvalcaba*, 167 F.3d at 524 n.3 (quoting *Graham*, 473 U.S. at 166.).

### (b)   Personal-Capacity Suits

"'Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.'" *Dittman v. Cal.*, 191 F.3d 1020, 1027 (9th Cir. 1999) (quoting *Graham*, 473 U.S. at 165); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) (finding that "[p]ersonal capacity suits seek to impose liability on state officials for acts taken under color of state law"); *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995). In setting forth the distinctions between personal and official capacity suits, the Supreme Court said:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *See, e.g.*, *Scheuer v. Rhodes*, 416 U.S. 232, 237-238 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent."

**16**

> *Monell*[], 436 U.S. at 690, n. 55 [].  As long as the
> government entity receives notice and an opportunity
> to respond, an official-capacity suit is, in all
> respects other than name, to be treated as a suit
> against the entity.  *Brandon*, 469 U.S., at 471-472.
> It is not a suit against the official personally, for
> the real party in interest is the entity.  Thus,
> while an award of damages against an official in his
> personal capacity can be executed only against the
> official's personal assets, a plaintiff seeking to
> recover on a damages judgment in an official-capacity
> suit must look to the government entity itself.

*Graham*, 473 U.S. 159, 166 (1985).

"While the plaintiff in a personal-capacity suit need not establish a connection to governmental 'policy or custom,' officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law."  *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992) (quoting *Graham*, 473 U.S. at 166-167).  Individuals are not immune under the doctrine of qualified immunity if they violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[6]  *Harlow v. Fitzgerald*, 457

---

[6] Immunity is not absolute, as the Ninth Circuit has explained:

> This court has held that, when a public official acts
> in reliance on a duly enacted statute or ordinance,
> that official ordinarily is entitled to qualified
> immunity.  *See Grossman v. City of Portland*, 33 F.3d
> 1200, 1210 (9th Cir. 1994) (holding that "an officer
> who reasonably relies on the legislature's
> determination that a statute is constitutional should
> be shielded from personal liability").  The existence
> of an authorizing statute is not dispositive,
> however.  Qualified immunity does not extend to a
> public official who enforces a statute that is
> "patently violative of fundamental constitutional

U.S. 800, 818 (1982).  "A victory in such a suit is a 'victory against the individual defendant, rather than against the entity that employs him.'"  *Cerrato v. San Francisco Community College Dist.*, 26 F.3d 968, 973 (9th Cir. 1994) (quoting *Graham*, 473 U.S. at 166-67).

### E.   State Law Claims Against Public Entities and the California Tort Claims Act.

Plaintiff brings the following state law claims against Defendants:  violation of Cal. Labor Code § 1102.5 and violation of Cal. Gov. Code § 52378, *et seq*.  The California Tort Claims Act governs tort claims against public entities and their officials.  *See* Cal. Gov. Code § 810 *et seq*.  The California Tort Claims Act ("CTCA") requires plaintiffs to present a written claim to the public entity allegedly responsible for their damage before initiating suit on the cause of action.  Cal. Gov. Code § 945.6.

Under the California Tort Claims Act, no suit for "money or damages" may be brought against a public entity until a written claim has been presented to the public entity and the claim either has been acted upon or is deemed to have been rejected. *Hart v. Alameda County,* 76 Cal. App. 4th 766, 778 (Cal. Ct. App. 1999).  The CTCA requires a plaintiff to file a timely tort claim with the public entity; if the claim is not timely, the public entity may reject the claim.

principles."  *Id*. at 1209.

*Dittman*, 191 F.3d at 1027.

If a claimant fails to timely file a claim with the public entity, and its claim is consequently rejected by the public entity for that reason, courts are without jurisdiction to hear the claimant's cause of action. *Greyhound Lines, Inc. v. County of Santa Clara*, 187 Cal. App. 3d 480, 487 (1986); *Moyer v. Hook*, 10 Cal. App. 3d 491, 492-3 (Cal. Ct. App. 1970); *Carr v. State of Cal.*, 58 Cal. App. 3d 139, 144-6 (Cal. Ct. App. 1976); *Williams v. Mariposa County Unified Sch. Dist.*, 82 Cal. App. 3d 843, 848-9 (Cal. Ct. App. 1978).  For causes of action for death, personal injury, or injury to personal property, a claimant must file a claim within six months of the accrual of the cause of action. Cal. Gov. Code § 911.2.

The CTCA also permits the filing of an application to file a late claim for certain claims: "[w]hen a claim that is required by Section 911.2 to be presented not later than six months after the accrual of the cause of action is not presented within that time, a written application may be made to the public entity for leave to present that claim."  Cal. Gov. Code § 911.4.  The CTCA's six-month limitations period applies to causes of action for death, personal injury, or injury to personal property.  *Id*. at § 911.2.  If a claimant fails to timely file a petition to file a late claim, courts are without jurisdiction to hear the cause of action.

The overall policy of the claim requirements and time limitations of the California Tort Claims Act are to: (1) "give the governmental entity an opportunity to settle just claims before suit is brought;" (2) "permit the entity to make an early investigation of the facts on which a claim is based, thus

**19**

enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim;" and (3) "avoid multiple suits arising out of the same transaction or occurrence and thus further[] the goal of judicial economy." *Greyhound Lines*, 187 Cal. App. 3d at 487 (quoting *Gehman v. Super. Ct.*, 96 Cal. App. 3d 257, 262, 265 (Cal. Ct. App. 1979), disapproved on other grounds by *Dept. of Transportation v. Super Ct. ("Frost")*, 26 Cal.3d 744, 759 n. 5 (1980)).

E.   **State Law Claims.**

Cal. Labor Code § 1102.5 is a "whistleblower" statute that establishes liability for employers who retaliate against their employees for disclosing information to government or law enforcement agencies.  Specifically, § 1102.5(b) provides that:

> An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

Cal. Gov. Code § 53298(a) establishes liability for any local agency officer, manager, or supervisor who retaliates against any employee for filing a complaint with the local agency reporting "gross mismanagement, a significant waste of funds, an abuse of authority, or a specific and substantial danger to public health or safety."  Cal. Gov. Code §§ 53298(a), 53296(c); *see also LeVine v. Weis*, 90 Cal. App. 4th 201, 212 (2001) (discussing § 53298 *in dicta*).

//

//

**1**

## V.   <u>ANALYSIS</u>

**2**

**3**    ### A.   <u>Whether Plaintiff's § 1983 Claims Are Time-Barred.</u>

**4**    A plaintiff is ordinarily not required to plead around

**5** affirmative defenses.  *Hyatt Chalet Motels*, 430 F.2d at 1120.

**6** The statute of limitations is an affirmative defense.   A

**7** complaint may nevertheless be dismissed pursuant to Rule 12(b)(6)

**8** if the facts and dates alleged demonstrate that the complaint is

**9** time-barred.  *Ritchie*, 210 F. Supp. 2d at 1123; *Jablon*, 614 F.2d

**10** at 682.   Defendants argue that Plaintiff's § 1983 claims are

**11** time-barred based on the allegations in the Second Amended

**12** Complaint.   (Doc. 33, Def.'s Mem. 2-6).

**13**    In California, claims brought under 42 U.S.C. § 1983 are

**14** governed by California's statute of limitations for personal

**15** injury actions.   *Taylor v. Regents of Univ. of Cal.*, 993 F.2d

**16** 710, 711-2 (9th Cir. 1993).   Plaintiff's 42 U.S.C. § 1983 claim

**17** is therefore governed by California's statute of limitations for

**18** personal injuries under Cal. Civ. Proc. § 335.1.   Currently, the

**19** limitations period is two years; however, prior to January 1,

**20** 2003, the limitations period for personal injuries was one year.[7]

**21** The applicable statute of limitations here is two years since the

**22** Complaint was filed after January 1, 2003.

**23**    "Although state law prescribes the statute of limitations

**24** applicable to section 1983 claims, federal law governs the time

**25** of accrual."  *Gibson v. United States*, 781 F.2d 1334, 1339 (9th

**26**

**27**

**28**    [7] California Senate Bill 688 amended the one year statute of
limitations to two years, effective January 1, 2003.

**21**

1   Cir. 1986).  "Under federal law, a cause of action generally

2   accrues when a plaintiff knows or has reason to know of the

3   injury which is the basis of his action."  *Id*. (internal

4   quotations omitted).

5       Plaintiff's § 1983 claims are based on allegations of

6   retaliation for his exercise of expression under the First

7   Amendment.  The adverse employment actions alleged include the

8   following:  (1) from June 1997 to December 2002, Plaintiff was

9   passed over for promotions and special assignments (including an

10  incident in July 2002 when Defendants intentionally "killed" a

11  promotional list with Plaintiff's name to avoid promoting

12  Plaintiff); and (2) on March 1, 2004, Plaintiff was placed on

13  Administrative Leave pending a fitness for duty examination.

14  (*See* Doc. 27, Pl.'s Opp. 10).

15      Defendants do not dispute that Plaintiff's March 1, 2004,

16  Administrative Leave is not time-barred.  (*See* Doc. 33, Def.'s

17  Mem. 6; Doc. 28, Def.'s Reply 4).  Plaintiff's complaint was

18  filed on November 1, 2004.[8]  Plaintiff's § 1983 claim based on

19  _____

20      [8] Neither party addresses Plaintiff's § 1983 claim in light
    of the relation back doctrine of Rule 15.  Defendants assume for
21  purposes of argument that November 1, 2004, is the operative
    date, instead of March 3, 2005, which is the date the Second
22  Amended Complaint was filed.  Before proceeding with the statute
    of limitations analysis, the operative date of filing must be
23  determined through a Rule 15 analysis.

24
        Fed. R. Civ. P. 15(c)(2) provides that "[a]n amendment of a
25  pleading relates back to the date of the original pleading when
    ... the claim or defense asserted in the amended pleading arose
26  out of the conduct, transaction, or occurrence set forth or
    attempted to be set forth in the original pleading."  Here,
27  Plaintiff's original Complaint contained § 1983 claims.  (Doc. 1,
    Compl. ¶ 62).  Those claims related to the same protected
28

                                22

his placement on Administrative Leave was therefore filed within the 2-year statutory period.  Likewise, Defendants do not dispute that alleged incidents of failure to promote Plaintiff that occurred after November 1, 2002 are not time-barred.  The only issue is whether incidents of failure to promote that occurred before November 1, 2002 are time-barred.

Plaintiff argues that incidents occurring before November 1, 2002 are not time-barred because they are part of a "continuing violation."  Plaintiff argues that the Ninth Circuit's "related acts" test applies, and cites two Ninth Circuit cases in support (i.e., *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1480-81; *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982)).  Defendants respond that the "related acts" test does not apply here because that test was overruled by the United States Supreme Court in *Nat'l R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  Defendants note that the *Morgan* Court held that where a plaintiff alleges discrete retaliatory acts, the statute of limitations runs separately from each act.  Defendants argue that Plaintiff's allegations that he was passed over for promotions a number of times from 1997 to December 2002 constitute discrete

activities alleged in the Second Amended Complaint; i.e., reporting (a) the Mata sexual misconduct allegations; (b) racial harassment of Southeast Asian Explorers; (c) the "banking" of overtime hours; and (d) testifying before the hearing regarding cheating on the promotional examination.  Plaintiff's § 1983 claims in its Second Amended Complaint therefore arise out of the same transactions alleged in its original complaint.  The relation back doctrine applies and the operative date for statute of limitations purposes is November 1, 2004.

acts.  Defendants argue that Plaintiff cannot base his § 1983
claim on alleged incidents of failure to promote that occurred
before November 1, 2002 because the statute of limitations for
each of those alleged actions has run.

Discrete employment actions are not subject to the
continuing violations doctrine.  *Morgan*, 536 U.S. 101, 114
(2002).  The United States Supreme Court includes "failure to
promote" among discrete employment actions.  *Id*.  Each of
Plaintiff's allegations of failure to promote is therefore a
separate actionable violation with a distinct accrual date.
Although *Morgan* was an employment discrimination action brought
under Title VII, the Ninth Circuit applies the Supreme Court's
holding in *Morgan* to actions brought under § 1983.  *RK Ventures,
Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002);
*Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*,
44 F.3d 822 (9th Cir. 2003); *Thompson v. City of Shasta Lake*, 314
F. Supp. 2d 1017, 1027 (E.D. Cal. 2004).

Plaintiff argues that "[a] continuing violation may be
established by showing a series of related acts against a single
individual, one or more of which falls within the limitations
period."  (Doc. 27, Pl.'s Opp. 11).  Plaintiff cites *Green v. Los
Angeles County Superintendent of Schools*, 883 F.2d 1472, 1480-81;
*Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.
1982) in support of its argument that the "related acts" doctrine
applies in determining whether alleged discriminatory acts
constitute continuing violations.  However, as the Ninth Circuit
noted recently:

*Morgan* overruled previous Ninth Circuit authority holding

that, if a discriminatory act was "related and similar to" acts that took place outside the limitations period, all the related acts--including the earlier acts--were actionable as part of a continuing violation. [citation] *Morgan* held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."

*RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir. 2002) (quoting *Morgan*, 122 S.Ct. at 2072).

Insofar as Plaintiff's § 1983 claims are based on incidents of failure to promote that occurred before November 1, 2002 Defendants' Motion to Dismiss is **GRANTED**.  This ruling has no bearing on the evidentiary admissibility of such prior acts or omissions, which must be separately determined.

**B.**   **Whether Plaintiff States Individual Capacity Claims Against the Individual Defendants Under § 1983.**

Defendants argue that Plaintiff fails to state individual capacity claims under § 1983 against the Defendants GARNER, DYER, ENMARK, FIFIELD, and GUTHRIE because Plaintiff fails to state a claim for First Amendment retaliation.  Defendants also argue that Plaintiff fails to state individual capacity claims against all individual Defendants because they are entitled to qualified immunity.  (Doc. 33, Def.'s Mem. 8-12).

**1.**   **Whether Plaintiff States Claims for First Amendment Retaliation.**

The underlying constitutional violation on which Plaintiff bases his § 1983 claim is First Amendment retaliation.  To state a claim for retaliation based on exercise of First Amendment rights, a plaintiff must allege the following elements:  (1) the

25

plaintiff engaged in expressive conduct that addressed a matter of public concern; (2) the government official took an adverse action against the plaintiff; and (3) the expressive conduct was a substantial or motivating factor for the adverse action taken by the government official. *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004).

Defendants GARNER, DYER, and ENMARK argue that Plaintiff's § 1983 claim against them must be dismissed because Plaintiff fails to allege the second element of a First Amendment retaliation claim, i.e., that GARNER, DYER, and ENMARK took an "adverse employment action" against Plaintiff. (Doc. 33, Def.'s Mem. at 8-12). However, Plaintiff responds that he alleges that all three of these defendants took an "adverse employment action" against him. (*See* Doc. 27, Pl.'s Opp. 15 n. 7; 16, n. 8). In a First Amendment retaliation case, an "adverse employment action" is an act that is reasonably likely to deter employees from engaging in constitutionally protected speech; it is not necessary that the plaintiff demonstrate the loss of a valuable governmental benefit or privilege. *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003) (holding that to determine whether an act constitutes an adverse employment action, "the inquiry is whether the exercise of the first amendment rights was deterred by the government employer's action") (internal quotations omitted). First, Plaintiff alleges that GARNER failed to promote him as retaliation for his "whistleblowing." (Doc. 1, Compl. ¶ 41). Second, Plaintiff alleges that DYER and ENMARK placed Plaintiff on Administrative Leave after his complaints. (*Id*. at ¶ 45). Third, Plaintiff alleges that DYER and ENMARK

26

refused to reinstate Plaintiff despite that three psychologists declared Plaintiff fit for duty.  (*Id*. at ¶ 50).  Each of these allegations identifies individual adverse employment action by each supervisor specifically directed against Plaintiff. Plaintiff has sufficiently alleged the "adverse employment action" element of a First Amendment retaliation claim against GARNER, DYER, and ENMARK.

Defendants also argue that Plaintiff fails to state a claim against Defendants FIFIELD and GUTHRIE because he did not allege the third element for a First Amendment Retaliation claim; i.e., that FIFIELD and GUTHRIE's failure to promote Plaintiff was motivated by Plaintiff's expression.  (Doc. 33, Def.'s Mem. 12). However, Plaintiff notes that Paragraph 41 of the Complaint does allege causation:  "NEVEU was denied each and every promotion as a result of WEST, FIFIELD, GUTHRIE, and GARNER'S actions, and in retaliation for NEVEU reporting the Mata allegations, the alleged racial harassment, and the end of the year report...."

Defendants' arguments that Plaintiff has not alleged all three elements of a First Amendment claim are without merit and find no support in the pleadings.  Defendants' Motion to Dismiss Plaintiff's § 1983 claims against the individual Defendants on the grounds that Plaintiff fails to allege First Amendment retaliation claims against them is **DENIED**.

### 2.   Qualified Immunity.

Defendants next argue that GARNER, DYER, ENMARK, FIFIELD, GUTHRIE, and WEST are entitled to qualified immunity.  Public officials sued in their individual capacity, as here, are immune

from suit if "their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Dittman*, 191 F.3d at 1027. "To determine whether qualified immunity is appropriate, a court must identify the specific right allegedly violated and determine whether that right was so clearly established as to alert a reasonable officer to its constitutional parameters; if the law is clearly established, it determines whether a reasonable officer could have believed lawful the particular conduct at issue." *Knox v. Southwest Airlines*, 124 F.3d 1103, 1107 (9th Cir. 1997) (internal quotations and citations omitted); *see also Saucier*, 533 U.S. at 201. Defendants' arguments in support of qualified immunity consist solely of conclusory statements that the individual defendants in question are immune from suit. (Doc. 33, Def.'s Mem., 10.4; 11.7; 11.25; 12:8). Defendants cite a few cases that address general immunity principles, but cite no authority to support that police officials are immune from suit when they retaliate against a whistelblowing employee for reporting sexual or racial discrimination to superiors, or for testifying that other officers were cheating on promotional exams. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Brewster v. Bd. of Educ. of the Lynwood Unifid Sch. Dist.*, 149 F.3d 971, 977 (9th Cir. 1988); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1107 (9th Cir. 1997).

Plaintiff alleges that his superiors denied him promotions and placed him on administrative leave because he reported sexual misconduct/harassment and racial discrimination and testified

that cheating was occurring on police department promotional exams.  Plaintiff argues that these allegations are sufficient to overcome qualified immunity at this stage in the litigation.

Plaintiffs' allegations do not establish that the officers here acted reasonably under the totality of the circumstances or in reasonable reliance on a clearly established statute or constitutional provision.  Plaintiff complains that he was retaliated against for having reported racial discrimination, sexual misconduct, and overtime improprieties, and for having testifying regarding cheating in the police department. Reporting such activities is expressive conduct regarding matters of public concern and is conduct facially protected by the First Amendment right to free speech.  Defendants do not attempt to identify any statute or constitutional provision under which Defendants could have reasonably carried out such actions. Defendant's Motion to Dismiss Plaintiff's § 1983 claims on qualified immunity grounds is **DENIED**.

## C.   **Whether Plaintiff States a Claim Against the CITY Under § 1983.**

Defendants argue that Plaintiff fails to state a claim against the CITY because he does not allege the existence of a *Monell* policy or custom.  (Doc. 33, Def.'s Mem. 13; *see also* Doc. 28, Def.'s Reply 5-6).  Plaintiff responds, in conclusory fashion, that he has alleged that Chief DYER has policy-making authority.  Plaintiff does not argue that he has alleged the existence of a defined policy that operated to violate his civil rights.  Defendants argue that the alleged actions of Chief DYER

1  do not constitute a "policy."  (Doc. 28, Def.'s Reply 6.18-27).

2  Local governments are "persons" subject to suit for

3  "constitutional tort[s]" under 42 U.S.C. § 1983.  *Haugen*,

4  339 F.3d at 854.  The CITY, as a local government, is therefore

5  subject to suit under § 1983.  However, local governments can

6  only be sued where the claims arise out of unconstitutional

7  actions by their employees who implement or execute a "policy

8  statement, ordinance, or decision officially adopted and

9  promulgated by that body's officers...."  *Monell*, 436 U.S. at

10  690-1.  In other words, a municipality cannot be held liable for

11  an employee's actions outside the scope of implementation of the

12  policies or customs on a *respondeat superior* theory.  *Id*.  A

13  municipality can, however, be held liable for the acts of one of

14  its employees acting in an "official" capacity.  "'[O]fficial-

15  capacity suits...generally represent only another way of pleading

16  an action against an entity of which an officer is an agent.'"

17  *Ruvalcaba*, 167 F.3d at 524 n. 3 (quoting *Graham*, 473, U.S. at

18  165).

19  Here, Plaintiff attempts to plead an "official capacity"

20  suit against Defendant DYER.  However, Plaintiff's conclusory

21  allegations regarding the purported policy implemented and/or

22  created by Defendant DYER do not define or describe what that

23  policy is.  (*See* Compl. ¶¶ 4, 54).  Plaintiff's "official

24  capacity" claim against the CITY is deficient.

25  Defendants argue that Plaintiff fails to state a claim

26  against the CITY because he has not alleged that the Defendant

27  officers had policy-making authority.  Plaintiff responds that he

28  has alleged that Chief DYER has policy-making authority.  (Doc.

1    27, Pl.'s Opp. 17).  Plaintiff cites Paragraphs 4 and 54 of his
2    Complaint, which do contain allegations that Defendant DYER has
3    policy-making authority.  (*Id.*).  However, Defendants correctly
4    note that the alleged actions of Defendant DYER in a specific
5    case are not *per se* an official policy.  (Doc. 28, Def.'s Reply
6    6).  Just as Plaintiff fails to state a claim against the CITY
7    because he fails to identify the CITY's policy by describing a
8    pattern or practice, Plaintiff also fails to state a claim
9    against Defendant DYER in his official capacity for failing to
10   define the same purported policy.  Alleging that DYER had policy-
11   making authority without defining the policy and its operation is
12   not sufficient.

13        Plaintiff's argument that delegation of authority to
14   subordinates can subject a municipality to liability also fails.
15   Plaintiff argues that municipal liability can be established by
16   showing that "'an official with final policymaking authority
17   either delegated that authority to, or ratified the decision of,
18   a subordinate.'"  (Doc. 27, Pl.'s Opp. 18 (quoting *Ulrich v. City*
19   *and County of San Francisco,* 308 F.3d 968, 985 (9th Cir. 2002)).
20   However, Plaintiff fails to identify any allegations in the
21   Complaint that identify what decision-making authority DYER
22   delegated to his subordinates.  Defendant notes that Plaintiff
23   incorporates Paragraphs 1-52 into his cause of action and that
24   "[s]uch allegations include numerous actions taken by a variety
25   of other officers...."  (Doc. 28, Def.'s Reply 6).  To the extent
26   that Plaintiff attempts to allege official capacity claims
27   against the Defendant Officers other than DYER, Plaintiff's
28   attempts fail.  Plaintiff's allegations of decision-making and

31

1  policy-making authority are conclusory and insufficient.  In

2  addition, no policy is identified or defined.

3      Defendants' Motion to Dismiss Plaintiff's § 1983 claim

4  against the CITY is **GRANTED** with leave to amend.

5

6      **D.    Whether Plaintiff Can Maintain a § 1983 Claim Based On
           a Violation of the Fourteenth Amendment.**

7

8      Defendants argue in a footnote that Plaintiff's § 1983 claim

9  should be dismissed insofar as it is based on a violation of the

10 Fourteenth Amendment.  (Doc. 33, Def.'s Mem. 16, n. 3).

11 Plaintiff does not address this argument in his opposition.

12 (*See* Doc. 28, Def.'s Reply 5).  Defendants argue that Plaintiff

13 appears to allege that Defendants violated his rights under the

14 Equal Protection Clause of the Fourteenth Amendment by treating

15 him differently for having exercised his rights to free speech.

16 (Doc. 33, Def.'s Mem. 16, n. 3).

17     "To state a claim under 42 U.S.C. § 1983 for a violation of

18 the Equal Protection Clause of the Fourteenth Amendment a

19 plaintiff must show that the defendants acted with an intent or

20 purpose to discriminate against the plaintiff based upon

21 membership in a protected class."  *Lee v. City of Los Angeles*,

22 250 F.3d 668, 686 (9th Cir. 2001).  The purpose of the equal

23 protection clause is to "secure every person within the State's

24 jurisdiction against intentional and arbitrary discrimination,

25 whether occasioned by express terms of a statute or by its

26 improper execution through duly constituted agents."  *Village of*

27 *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)

28 (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441,

**32**

445 (1923)).  A successful equal protection claim may be brought by a "class of one," where the plaintiff alleges that he has been intentionally treated differently from others similarly situated. *Id.* at 563.

Plaintiff identifies no allegations in his Complaint that he was treated differently from others who were similarly situated.

Defendant's Motion to Dismiss Plaintiff's § 1983 claims insofar as they are based on alleged violations of the Equal Protection Clause of the Fourteenth Amendment is **GRANTED.**

### E.   State Law Claims.

#### 1.   Whether Jurisdiction Exists over Plaintiff's Claim Under Cal. Labor Code § 1102.5.

Cal. Labor Code § 1102.5 establishes liability for employers who retaliate against their employees for disclosing information to government or law enforcement agencies.  Defendants argue that a federal court lacks jurisdiction to hear Plaintiff's claim for violation of Cal. Labor Code § 1102.5 because, pursuant to Cal. Labor Code §§ 98.6 and 98.7, claims under Section 1102.5 are solely within the province of the Labor Commissioner.  (Doc. 33, Def.'s Mem. 17; Doc. 28, Def.'s Reply 7).  Plaintiff responds that, pursuant to Cal. Labor Code § 96, Plaintiff "may" file a claim with the Labor Commissioner, although he is not required to do so.

Cal. Labor Code § 98.7 provides that "[a]ny person who believes that he or she has been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner may file a complaint with

1  the division within six months after the occurrence of the

2  violation."  Cal. Labor Code § 98.6(a) describes claims brought

3  pursuant to various sections of the labor code, including §

4  1102.5, as brought "under the jurisdiction of the labor

5  Commissioner."  Neither of the provisions Defendants cite

6  provides that **exclusive** jurisdiction over § 1102.5 claims lies

7  with the Labor Commissioner.  Defendants argue that Plaintiff

8  cites no cases allowing a court to hear a claim under § 1102.5.

9  Defendants also cite no cases holding that the Labor Commissioner

10  has exclusive jurisdiction over § 1102.5 claims and that a court

11  is *not* allowed to hear a § 1102.5 claim.

12      The California Supreme Court has recently held that a

13  litigant seeking damages under § 1102.5 is required to exhaust

14  administrative remedies before the Labor Commissioner prior to

15  bringing suit.  *Campbell v. Regents of the Univ. of Cal.*, 35 Cal.

16  4th 311, 333-4 (2005) ("We conclude that absent a clear

17  indication of legislative intent, we should refrain from

18  inferring a statutory exemption from our settled rule requiring

19  exhaustion of administrative remedies.")  The exhaustion of

20  administrative remedies rule is "well established in California

21  jurisprudence."  *Id*. at 321.  "'[T]he rule is that where an

22  administrative remedy is provided by statute, relief must be

23  sought from the administrative body and this remedy exhausted

24  before the courts will act.'"  *Id*. (quoting *Ablelleira v. Dist.

25  Ct. of Appeal,* 17 Cal. 2d 280, 292 (1941)).  "Exhaustion of

26  administrative remedies is a jurisdictional prerequisite to

27  resort to the courts."  *Id*. (quoting *Johnson v. City of Loma

28  Linda*, 24 Cal. 4th 61, 70 (2000) (internal quotations omitted)).

**34**

Plaintiff does not allege that he exhausted available administrative remedies, including bringing a complaint before the Labor Commissioner, before bringing suit.

Defendants' Motion to Dismiss Plaintiff's claim under Cal. Labor Code § 1102.5 is **GRANTED** on the grounds that there is no jurisdiction.[9]

### 2.   Whether Plaintiff States a Claim Under Cal. Gov. Code § 53298, *et seq.*

Cal. Gov. Code § 53298(a) establishes liability for any local agency officer, manager, or supervisor who retaliates against any employee for filing a complaint with the local agency reporting "gross mismanagement, a significant waste of funds, an abuse of authority, or a specific and substantial danger to public health or safety."  Cal. Gov. Code §§ 53298(a), 53296(c); *see also LeVine*, 90 Cal. App. 4th at 212 (discussing § 53298 *in dicta*).

Plaintiff's claim under § 53298 arises out of his allegations that he was placed on Administrative Leave because of (1) his written reports of sexual molestation by former-officer Mata and of "administrative improprieties that appeared designed to foster opportunities for further sex crimes;" and (2) his "written reports of racial harassment of Southeast Asian Explorers by Police Activity League volunteers."  (Doc. 23, Second Am. Compl. ¶¶ 21, 29, 60).  Although Plaintiff's

---

[9] Because there is no jurisdiction to hear this claim, Defendants' substantive arguments regarding the sufficiency of Plaintiff's Section 1105.2 claim will not be addressed.

allegations are not entirely clear, it appears he filed at least some of these reports with the Internal Affairs and Human Resources Departments of the Fresno Police Department. (*See id.*). Plaintiff alleges that his reports of alleged sexual misconduct by Officer Mata and racial discrimination against "Southeast Asian Explorers" constituted "an abuse of authority and a substantial and specific danger to public health and safety." (*Id.* at ¶ 60).

### (a)   Whether Plaintiff States a Cal. Gov. Code § 53298 Claim against the CITY.

Defendants argue that Plaintiff is not entitled to bring a § 53298 claim against the CITY as is explicitly set forth in the statute. (Doc. 33, Def.'s Mem. 18). Plaintiff does not dispute Defendant's argument in his opposition. (*See* Doc. 28, Def.'s Reply 9).

Cal. Gov. Code § 53298.5(b) provides that no cause of action for violation of that section shall be brought against the local public entity:

> In no way [] shall the provisions of this article establish ...any new cause of action against the local public entity other than liabilities contained in existing law.

Defendant's Motion to Dismiss Plaintiff's Claim Under Cal. Gov. Code § 53298, *et seq.*, against the CITY is **GRANTED.**

### (b)   Whether Plaintiff States a Cal. Gov. Code § 53298 Claim against the Individual Defendants.

Defendants argue that Plaintiff fails to state a claim under § 53298 against the individual officers because he has not

**36**

pleaded all required elements as set forth in Cal. Gov. Code §§ 53296(c)-(d), 53297(a)-(d), and 53298(a).  Plaintiff argues that he has complied with the pleading requirements.

The elements for this whistleblower cause of action are not clearly listed in any single section of the statute.  Also, there does not appear to be any case law interpreting this statute. According to the statute's various provisions, it appears that the elements of a claim under § 53298 include the following:

1) The employee filed a complaint with a local agency regarding gross mismanagement, a significant waste of funds, an abuse of authority, or a specific and substantial danger to public health or safety.  Cal. Gov. Code §§ 53297(a), 53276(c)-(d).

2) The complaint was filed within 60 days of the date of the act or event that is the subject of the complaint. *Id*. at § 53297(a).

3) The complaint was filed under penalty of perjury.  *Id*. at § 53297(d).

4) The complaint was filed in accordance with the locally adopted administrative procedure, or in the alternative there was no administrative procedure available.  *Id*. at § 53297(c).

5) The employee made a good faith effort to exhaust all available administrative remedies before filing the complaint.[10]  *Id*. at § 53297(b).

---

[10] "The 60-day time limit specified in [§ 53297(a)] shall be extended by the amount of time actually utilized by the employee in pursuing administrative remedies."  *Id*. at § 53297(b).

6)     A local agency officer, manager, or supervisor took a

reprisal action against the employee for filing the

complaint.  *Id*. at § 53298(a).

Plaintiff here has alleged three of the six elements listed above: (1) the complaints he filed with Internal Affairs and/or Human Resources related to abuse of authority and a substantial and specific danger to public health or safety; (2) that these complaints were filed in accordance with the CITY's administrative policies and procedures; and (3) that his supervisors, who were local agency officers, took a reprisal action (i.e., placing him on Administrative Leave) as the result of his filing these complaints.  Plaintiff has not alleged the three remaining elements; i.e., (1) that he filed these complaints within 60 days of the acts or events; (2) that the complaints were filed under penalty of perjury; and (3) that he attempted, in good faith, to exhaust the available administrative remedies before filing his complaint, or in the alternative that there were no available administrative remedies.

Assuming that the elements defined by the statute are pleading requirements, Plaintiff has failed to allege all elements necessary to state a claim.  Defendants' Motion to Dismiss Plaintiff's claim under § 52378 is **GRANTED** with leave to amend.

### (c)   **Whether Plaintiff fails to allege causation between Plaintiff's whistleblowing activities and the retaliatory act.**

Defendants argue that because the whistleblowing activities alleged took place in 1996 and 1997, and the alleged retaliatory

1   act (i.e., the placement of Plaintiff on Administrative Leave)

2   took place over seven years later in March 2004, Plaintiff fails

3   to establish a causal connection.  Plaintiff's response is to

4   refer to several paragraphs of the Second Amended Complaint

5   (¶¶ 28-29, 37, 39-41, 43).  Plaintiff states in his opposition

6   that "[w]hile the allegations are too extensive to set forth in

7   full here, a quick perusal of the Complaint as a whole

8   demonstrates the existence, if not presumption of a causal link."

9   (Doc. 27, Pl.'s Opp. 20).

10      Plaintiff's Complaint alleges that, from 1997 to 2002, he

11  was retaliated against by being passed over for promotions, and

12  that eventually the retaliation culminated in his being placed on

13  administrative leave in March 2004.  While Plaintiff's argument

14  about causation is tenuous, Defendants' contention that Plaintiff

15  has failed to "establish" causation, ignores that this issue is

16  for the fact-finder and cannot be resolved at the pleading stage.

17      Defendant's Motion to Dismiss Plaintiff's § 53298 claim on

18  the grounds of failure to allege causation is **DENIED.**

19

20              **(d)   Whether Plaintiff's § 53298 Claim is Time-**
                      **Barred for Failure to Timely File a Claim**
21                    **under the California Tort Claims Act.**

22      Under the California Tort Claims Act, no suit for "money or

23  damages" may be brought against a public entity until a written

24  claim has been presented to the public entity and the claim

25  either has been acted upon or is deemed to have been rejected.

26  *Hart v. Alameda County,* 76 Cal. App. 4th 766, 778 (Cal. Ct. App.

27  1999).  The CTCA requires a plaintiff to file a timely tort claim

28  with the public entity; if the claim is not timely, the public

entity may reject the claim.  If a claimant fails to timely file a claim with the public entity, and its claim is consequently rejected by the public entity for that reason, courts are without jurisdiction to hear the claimant's cause of action.  *Greyhound Lines*, 187 Cal. App. 3d at 487; *Moyer*, 10 Cal. App. 3d at 492-3; *Carr*, 58 Cal. App. 3d at 144-6; *Williams v. Mariposa County*, 82 Cal. App. 3d at 848-9.  For causes of action for death, personal injury, or injury to personal property, a claimant must file a claim within six months of the accrual of the cause of action.  Cal. Gov. Code § 911.2.

The parties dispute when Plaintiff's cause of action under § 53298 accrued.  Defendants argue that it accrued in March 2004, when Plaintiff was placed on administrative leave.  Plaintiff suggests that it accrued on July 6, 2004, when Defendants DYER and ENMARK refused to reinstate Plaintiff after allegedly having received opinions from three psychiatrists that he was fit for duty.  Neither party offers any argument or authority as to when a claim under § 53298 accrues.  Plaintiff argued that the earliest he reasonably could have been aware of his whistleblower claim was July 2004, when Defendants refused to reinstate him to duty after having been declared fit for duty by three psychologists.  Construing Plaintiff's allegations in the most favorable light, as is required on a Rule 12(b)(6) motion, Plaintiff's whistleblower claim under § 53298 is not deficient for failure to timely file a complaint under the California Tort Claims Act.

Defendant's Motion to Dismiss Plaintiff's § 53298 claim on the grounds it is barred by the California Tort Claims Act is

**40**

1  DENIED.

2

3  **F.   Defendants' Motion to Strike Pursuant to Fed. R. Civ.
4     P. 12(f).**

5      "[M]otions to strike should not be granted unless it is

6  clear that the matter to be stricken could have no possible

7  bearing on the subject matter of the litigation." *Colaprico*, 758

8  F. Supp. at 1339 (citation omitted).

9

10     **1.   Plaintiff's Claim for Punitive Damages under
11        § 1983.**

12     First, Defendants argue that Plaintiff's claim for punitive

13  damages under § 1983 against the individual defendants should be

14  dismissed because Plaintiff fails to plead sufficient facts to

15  support claims of malice against them.  (Doc. 33, Def.'s Mem.

16  20).  Under § 1983, punitive damages are proper either when a

17  defendant's conduct was driven by evil motive or intent, or when

18  it involved a reckless or callous indifference to the

19  constitutional rights of others.  *Smith v. Wade*, 461 U.S. 30, 56

20  (1983); *Larez v. City of Los Angeles*, 946 F.2d 630, 639 (9th Cir.

21  1991).  A public entity cannot be sued under § 1983 as a matter

22  of law for punitive damages.  *City of Newport v. Fact Concerts,*

23  *Inc.*, 453 U.S. 247, 271 (1981).  Insofar as Defendants seek to

24  strike Plaintiff's punitive damages claim against the CITY, their

25  motion is **GRANTED.**

26     As to the punitive damages claims against the individual

27  defendants, Defendants' conclusory argument that "Plaintiffs

28  [sic] allegations are insufficient to meet [the] standard as to

**41**

1  all six individual Defendants" is not persuasive.  It is not

2  clear from Plaintiff's allegations whether the individual

3  defendants were motivated by evil intent or whether they acted

4  with recklessness or callous indifference to Plaintiff's

5  constitutional rights.  Plaintiff's allegations are sufficient to

6  infer malice.  *See* Fed. R. Civ. P. 9(b).  Whether the officers

7  acted with malice is a question of fact not properly decided on a

8  motion to dismiss.  Defendants' Motion to Strike Plaintiff's

9  claim for punitive damages against the individual defendants is

10 **DENIED.**

11

12          **2.   Plaintiff's Claim for Punitive Damages under Cal.
                    Gov. Code § 53298.**
13

14      Second, Defendants argue that Plaintiffs' claim for punitive

15 damages under Cal. Gov. Code § 53298 should be stricken for

16 failure to plead malice.  In support, Defendants cite the

17 definition of malice at Cal. Civ. Code § 3294(c)(1) and two

18 California state cases regarding malice pleading requirements.

19 Federal district courts sitting in diversity apply the

20 substantive law of the forum state, but apply procedural rules as

21 stated in the Federal Rules of Civil Procedure.  *Erie R.R. Co. v.*

22 *Tompkins*, 30 U.S. 64, 78 (1938); *see also Clark v. Allstate Ins.*

23 *Co.*, 106 F. Supp. 2d 1016, 1019 n.3 (S.D. Cal. 2000).  The

24 California law Defendants cite is not controlling.  While Cal.

25 Civ. Code § 3294(a) applies insofar as it allows for the recovery

26 of punitive damages on a successful tort claim (including

27 //

28 //

                                    **42**

statutory torts),[11] the Federal Rules of Civil Procedure govern pleading standards in federal district court.

Specifically, Rule 9(b) governs pleading requirements for malice:  "Malice, intent, knowledge and other condition[s] of mind of a person may be averred generally."  The court in *Clark*, following other federal district courts in California, held that "conclusory assertions that a defendant acted intentionally, with 'malice' or with 'conscious disregard'" are "adequate to plead the mental state required under Section 3294."  *Clark*, 106 F. Supp. 2d at 1019-20 (holding that because plaintiff's complaint alleges that defendant intentionally denied plaintiff's insurance claim and that it acted with an intent to injure plaintiff, the Complaint complied with Fed. R. Civ. P. 8, 9).  Here Plaintiff alleges that Defendants retaliated against Plaintiff for his "whistleblowing" activities.  (*See* Doc. 23, Second Am. Compl. ¶ 60).  Allegations of retaliation are sufficient to infer intent to injure.  Defendants' Motion to Strike Plaintiff's claim for punitive damages under Cal. Gov. Code § 53298 is **DENIED**.

### 3.   Plaintiff's Allegations Relating to Defendants' Failure to Promote Plaintiff "Between June 1997 and December 2002."

Defendants argue that Plaintiff's allegations relating to Defendants' failure to promote Plaintiff "between approximately June 1997 and December 2002" should be stricken because one of

---

[11] Cal. Civ. Code § 3294(a) allows for an award of punitive damages against a tortfeasor whose acts are characterized by oppression, fraud, or malice.

Plaintiff's previously-filed complaints alleged different dates. Specifically, Plaintiff's First Amended Complaint alleged that Defendants failed to promote him "between June 1997 and January 2002."  Defendants argue that Plaintiff's "new" allegations contradict the allegations in the First Amended Complaint, that Plaintiff provided no explanation for the purported contradiction, and that therefore the "new" allegations need not be accepted as true and should be stricken.  (Doc. 33, Def.'s Mem. 21).  Defendants cited no law or rule that does not allow a plaintiff to expand the time period of alleged wrongdoing.  The expanded time period in the operative complaint does not contradict the allegation in the earlier complaint.  Defendants' Motion to Strike Plaintiffs' allegations relating to Defendants' failure to promote him between June 1997 and December 2002 is **DENIED.**

### 4.   Plaintiff's Allegations Relating to Adverse Employment Actions Taken Before November 1, 2002.

Defendants argue that Plaintiff's allegations relating to adverse employment actions taken before November 1, 2002, should be stricken as time-barred.  Under notice pleading requirements, a party is not required to plead evidentiary facts.  *See* Fed. R. Civ. P. 8(a).  Allegations relating to adverse employment actions may be evidence of improper motive, even if a § 1983 claim based upon those actions would be time-barred.  *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003).  It is not proper to make evidentiary rulings at the pleading stage.  Striking allegations of adverse actions outside

**44**

the statutory period for § 1983 violations is therefore not appropriate.  Defendants' Motion to Strike Plaintiff's allegations relating to adverse actions prior to November 1, 2002 is **DENIED.**

### 5.   Plaintiff's Allegations Relating to his Written Reports of the Alleged Sexual Misconduct of Officer Mata.

Defendants' papers do not make clear the precise allegations regarding Officer Mata that they move to strike.  Defendants refer to Paragraphs 16-28 of the Second Amended Complaint in their motion and their reply, and appear to move to strike all allegations contained in these paragraphs.  However, Defendants' argument relates only to Plaintiff's allegations regarding the purported dispute between Internal Affairs and Plaintiff's chain of command as to whether Plaintiff should report issues relating to Officer Mata in writing.  (Doc. 28, Def.'s Reply 12). Defendants assume that Plaintiff's § 1983 cause of action is based upon this purported internal police dispute.  Defendants argue that the allegations regarding the disagreement over the form of the reports does not, as a matter of law, relate to a matter of public concern, and is therefore not protected speech under the First Amendment.  Plaintiff's response does not relate specifically to his allegations regarding the form of the reports, but instead appears to relate to all of his allegations regarding Mata.  Plaintiff argues that reports of sexual misconduct by a police officer address matters of public concern and are therefore protected speech.

The parties' treatment of this complex First Amendment issue

45

is cursory and deficient.  First, Defendants appear to raise an argument on the merits, which is not appropriate on a Rule 12(f) motion to strike.  *See Ritzer v. Gerovicap Pharmaceutical Corp.*, 162 F.R.D. 642, 644 (D. Nev. 1995).  Defendant appears to argue that internal disputes over the form of reports are not, as a matter of law, matters of public concern.  This argument goes to the merits of Plaintiff's First Amendment retaliation claim and is more appropriately dealt with on a Rule 12(b)(6) motion to dismiss.

Second, Defendants' characterization of Plaintiff's § 1983 claim is inaccurate, although Plaintiff does not dispute Defendants' characterization in his opposition.  Defendants state that Plaintiff's § 1983 violation is "based on a dispute between the Internal Affairs Division and his chain of command as to whether he should report issues relating to Officer Mata in writing."  (Doc. 33, Def.'s Mem. 24).  Plaintiff's § 1983 cause of action, as stated in the Second Amended Complaint, contains no specific allegations regarding the protected speech upon which his § 1983 claim is based.  (*See* Doc. 23, Second Am. Compl. ¶¶ 53-4).  Allegations elsewhere in the complaint, however, provide additional information.  Specifically, Plaintiff alleges that he was retaliated against for having reported to Internal Affairs, in writing, information regarding purported sexual misconduct by Officer Mata.  Furthermore, Plaintiff alleges that he was retaliated against for disobeying orders from his immediate chain of command not to report the sexual misconduct to Internal Affairs, in writing or otherwise, and that he was only to report the alleged sexual misconduct to his immediate

1  superiors.

2     Plaintiff's allegations regarding a purported "dispute"
3  within the Fresno Police Department over whether reports of
4  Officer Mata's alleged sexual misconduct should be in writing are
5  irrelevant to Plaintiff's § 1983 claim and should therefore be
6  stricken is not appropriately decided on a motion to strike.

7     Public employees do not relinquish their right to free
8  speech by virtue of their employment.  *Ceballos v. Garcetti*, 361
9  F.3d 1168, 1173 (9th Cir. 2004).  However, public employees do
10  not enjoy absolute First Amendment rights.  *Id*.  To determine
11  whether a public employee's speech is protected by the First
12  Amendment, courts in the Ninth Circuit apply a two-step test.
13  *Id*.  The first step is to determine whether the speech addresses
14  a matter of public concern.  *Id*.  If it does, the next step is to
15  engage in a balancing analysis established by the United States
16  Supreme Court in *Pickering v. Bd. of Educ. of Township High*
17  *School Dist. 205*, 291 U.S. 563, 568 (1968).  The balancing test
18  requires a court to determine whether the public employee's
19  interest in expressing him- or herself outweighs the government's
20  interest "in promoting workplace efficiency and avoiding
21  workplace disruption."  *Id*.

22     Defendants argue that allegations regarding the dispute
23  between Internal Affairs and Plaintiff's chain of command over
24  whether the reports regarding Officer Mata should be in writing
25  are not matters of public concern and are therefore irrelevant to
26  Plaintiff's First Amendment claim and should be stricken.  This
27  argument goes to the merits of Plaintiff's First Amendment
28  retaliation claim and should not be dealt with on a motion to

47

strike.  The issue whether the expressive conduct upon which
Plaintiff bases his First Amendment retaliation claim is
protected speech was not fully briefed by the parties and should
not be decided in the context of this motion.

The dispute over the reports concerning alleged violations
of law by police officers is part of the overall alleged scheme
of discrimination.  Defendants' Motion to Strike Plaintiff's
allegations in Paragraphs 16 through 28 is **DENIED.**  Defendants'
motion to strike the Mata allegations as irrelevant to the state
whistleblower claims is **MOOT.**


                          **VI.   <u>CONCLUSION</u>**


        Defendants' Motions to Dismiss pursuant to Rule
        12(b)(6):


        (1)   Plaintiff's § 1983 claims insofar as they are
              based on adverse employment actions occurring
              before November 1, 2002 is **GRANTED** with prejudice;


        (2)   Plaintiff's § 1983 claims against the individual
              Defendants is **DENIED;**


        (3)   Plaintiff's § 1983 claim against the CITY is
              **GRANTED** with leave to amend; Defendants' Motion
              for a More Definite Statement pursuant to Rule
              12(e) as to Plaintiff's § 1983 claim against the
              CITY is **MOOT;**

                                **48**

1       (4)    Plaintiff's § 1983 claim based on deprivation of

2              rights under the Fourteenth Amendment is **GRANTED;**

3

4       (5)    Plaintiff's Cal. Labor Code § 1102.5 claim is

5              **GRANTED;** and

6

7       (6)    Plaintiff's Cal. Gov. Code § 53298 claim against

8              the CITY is **GRANTED;** Plaintiff's Cal. Gov. Code §

9              53298 claim against the individual Defendants on

10            the grounds of failure to plead all elements is

11            **GRANTED** with leave to amend; Plaintiff's § 53298

12            claim against individual defendants on all other

13            grounds is **DENIED.**

14

15     Defendants' Motions to Strike pursuant to Rule 12(f)

16     Plaintiff's claim for punitive damages as to the CITY

17     is **GRANTED.**  Defendants' Motion to Strike all remaining

18     claims is **DENIED.**

19

20 **SO ORDERED.**

21 **DATED: July 15\_\_, 2005.**

22                                **/s/ Oliver W. Wanger**

23                       _____

24                         **Oliver W. Wanger**
                           **UNITED STATES DISTRICT JUDGE**

25

26

27

28