1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   EASTERN DISTRICT OF CALIFORNIA

7
                                    )
8  MICHAEL NEVEAU,                  )    1:04-cv-06490  OWW JLD
                                    )
9              Plaintiff,           )    MEMORANDUM DECISION AND
                                    )    ORDER RE DEFENDANTS'
10     v.                           )
                                    )    (1) MOTION TO DISMISS
11 CITY OF FRESNO, a municipality;  )    PURSUANT TO FED. R. CIV. P.
   JERRY DYER, individually;        )    12(b)(6);
12 MICHAEL GUTHRIE, individually;   )
   GREG GARNER, individually;       )    (2) MOTION FOR A MORE
13 DARREL FIFIELD, individually;    )    DEFINITE STATEMENT PURSUANT
   MARTY WEST, individually;        )    TO FED. R. CIV. P. 12(e);
14 ROGER ENMARK, individually; and  )    AND
   DOES 1 through 10,               )
15                                  )    (3) MOTION TO STRIKE
                                    )    PORTIONS OF THE SECOND
16             Defendants.          )    AMENDED COMPLAINT PURSUANT
                                    )    TO FED. R. CIV. P. 12(f).
17 _____)

18

19

20            I.    INTRODUCTION

21

22     This is a civil rights action by a City of Fresno police

23 officer against the City of Fresno and several individual members

24 of the City of Fresno Police Department.  Michael Neveu

25 ("Plaintiff") brings a civil rights claim under 42 U.S.C. § 1983

26 and under two California state "whistleblower" statutes.

27 Defendants CITY OF FRESNO, JERRY DYER, MICHAEL GUTHRIE, GREG

28 GARNER, DARREL FIFIELD, MARTY WEST, and ROGER ENMARK

                                1

1  ("Defendants") move to dismiss Plaintiff's Third Amended
2  Complaint.  (Doc. 41 Defs.' Mot.; Doc. 42, Defs.' Mem.)
3  Plaintiff opposes the motion.  (Doc. 47, Pl.'s Opp.)
4
5                    II.   **PROCEDURAL HISTORY**
6
7       Plaintiff filed his original complaint on November 1, 2004.
8  (Doc. 1, Compl.)  Plaintiff filed the operative Third Amended
9  Complaint on July 25, 2005.  (Doc. 39, Third Am. Compl.)
10 Plaintiff's Third Amended Complaint contains three claims, all
11 which arise out of Plaintiff's complaint that Defendants
12 retaliated against him for having reported sexual misconduct,
13 racial harassment, and cheating on police department promotional
14 exams: (1) 42 U.S.C. § 1983 (first amendment retaliation);
15 (2) Cal. Labor Code § 1102.5 (whistleblower retaliation); and
16 (3) Cal. Gov. Code § 53298 (whistleblower retaliation).
17 Defendants seek to dismiss various claims and to strike
18 allegations contained in the Third Amended Complaint.  (Doc. 42,
19 Defs.' Mem.)  Plaintiff filed opposition on September 16, 2005.
20 (Doc. 47, Pl.'s Opp.)  Defendants replied on September 26, 2005.
21 (Doc. 48, Defs.' Reply)
22      Oral argument was heard on October 3, 2005.  Michael A.
23 Morguess, Esq., appeared on behalf of Plaintiff.  Joseph D.
24 Rubin, Esq., appeared on behalf of Defendants.
25
26                  III.   **SUMMARY OF PLEADINGS**
27
28      This civil rights action is brought by a Fresno City police

                                  **2**

officer against the City of Fresno, the Fresno Police Chief, and
five individual Fresno City Police officers.  Plaintiff brings
his § 1983 claim based on an alleged violation of his first
amendment right to freedom of expression.  Plaintiff claims he
was retaliated against for reporting to his superiors a number of
incidents of sexual harassment, racial discrimination, and
cheating on police department exams.  The allegations in the
complaint are taken as true for the purpose of this motion to
dismiss.

Plaintiff alleges two adverse employment actions.  First,
from June 1997 through December 2002, Defendants WEST, FIFIELD,
GUTHRIE, and GARNER failed to promote him despite his high
qualifications and performance.  Second, in March 2004,
Defendants DYER, ENMARK, and GUTHRIE placed Plaintiff on
administrative leave and required Plaintiff to undergo
psychological examinations to determine his fitness for duty.
Despite the recommendations of three psychologists that he was
fit for duty, Defendants refused to reinstate him to duty in July
2004.[1]

Plaintiff claims he was retaliated against for four
allegedly protected first amendment activities.  These
allegations are addressed in greater detail in the July 2005
order granting in part Defendants' motion to dismiss.  (Doc. 35,
"July 2005 Order")  First, Plaintiff reported alleged sexual
misconduct by Richard Mata, a suspended police department
official who was under investigation for improper sexual behavior

---

[1] Plaintiff has since been reinstated to duty.

**3**

towards a minor.  Plaintiff alleges that Internal Affairs asked Plaintiff to report to their office in writing any information he obtained regarding Mata.  WEST instructed Plaintiff not to put any information regarding Mata in writing or report any information to Internal Affairs.  Instead, WEST instructed Plaintiff to report such information verbally to his chain of command.  Second, Plaintiff alleges that he reported to his immediate supervisors in writing racial discrimination against Southeast Asian police officers.  Third, Plaintiff submitted an end-of-the year report involving the "banking" of overtime hours. Fourth, Plaintiff testified at an administrative hearing regarding cheating on police promotional exams.

Plaintiff's complaint also contains allegations regarding the CITY's "policies, customs, practices and decisions" regarding promotions and administrative leave ("employment policies"). (*Id*. at ¶ 54)  Plaintiff alleges that Chief DYER had policy-making authority over the employment policies and that "DYER used the...FRESNO policies in retaliatory fashion to deprive NEVEU of his rights as specifically alleged."  (*Id*.)

## IV.   LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) allows a defendant to attack a complaint for failure to state a claim upon which relief can be granted.  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is disfavored and rarely granted: "[a] complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him

**4**

1  to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980

2  (9th Cir. 2002) (citations omitted).  In deciding whether to

3  grant a motion to dismiss, the court "accept[s] all factual

4  allegations of the complaint as true and draw[s] all reasonable

5  inferences in favor of the nonmoving party." *TwoRivers v. Lewis*,

6  174 F.3d 987, 991 (9th Cir. 1999).

7       "The court need not, however, accept as true allegations

8  that contradict matters properly subject to judicial notice or by

9  exhibit.  Nor is the court required to accept as true allegations

10 that are merely conclusory, unwarranted deductions of fact, or

11 unreasonable inferences." *Sprewell v. Golden State Warriors*,

12 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).  For

13 example, matters of public record may be considered under Fed. R.

14 Civ. P. 201, including pleadings, orders and other papers filed

15 with the court or records of administrative bodies.  *See Lee v.*

16 *City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

17 Conclusions of law, conclusory allegations, unreasonable

18 inferences, or unwarranted deductions of fact need not be

19 accepted.  *See Western Mining Council v. Watt*, 643 F.2d 618, 624

20 (9th Cir. 1981).

21

22                    **V.   ANALYSIS**

23

24      **A.   Whether Plaintiff States a *Monell* Claim Against the
             CITY Under § 1983.**

25

26      Defendants argue that Plaintiff's § 1983 claim against the

27 CITY should be dismissed because Plaintiff's factual allegations

28 are insufficient to support *Monell* liability under § 1983.

**5**

Under the Supreme Court's decision in *Monell v. Dep't of Soc. Svcs. of City of New York*, 436 U.S. 658, 694 (1978), a local government is liable under § 1983 for its policies that cause constitutional torts.  *See also McMillian v. Monroe County*, 520 U.S. 781, 785 (1997).  A suit against a local official in his "official capacity" is the same as a suit against the local governmental entity itself.  *Id.* at 785 n. 2; *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) ("a suit against a state official in his official capacity is no different from a suit against the [official's office or the] State itself" (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989))); *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 524 n.3 (9th Cir. 1999).

A litigant can establish a *Monell* claim in one of three ways:  "(1) by showing a longstanding practice or custom which constitutes the standard procedure of the local governmental entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."  *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotations omitted) (quoting *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 985-86 (9th Cir. 2002)).

As an initial matter, Plaintiff's allegations against Chief DYER and his allegations regarding the CITY's policies, customs, and/or practices are confusing.  Paragraph 54 of Plaintiff's

1    complaint alleges that:

2          Chief DYER'S actions, as alleged herein, were
3          taken as an official policy maker, and with
         the accompanying authority to which DEFENDANT
4          FRESNO delegated its governing powers in the
         subject matter areas in which these policies
5          were promulgated or decisions taken or
         customs and practices followed.  The acts and
6          omissions of DEFENDANT DYER, as alleged
         herein, manifested or conformed to official
7          policies, customs, practices, or decisions of
         DEFENDANT FRESNO, in that FRESNO delegated to
8          DYER its policy making authority in all
         matters of employment relations within the
9          DEPARTMENT, and/or DEFENDANT FRESNO, with
         knowledge of the afore said [sic] policies,
10         customs, practices and decisions of DEFENDANT
         DYER, approved, ratified and adopted said
11         policies, customs, practices and decisions.
         More specifically, DYER, as the Chief of
12         Police, has final official policy making
         authority with respect to promotions within
13         the Police Department, as well as placing
         officers on administrative leave and
14         subjecting them to a fitness for duty
         examination.  Moreover, DEFENDANT DYER acted
15         pursuant to FRESNO's policies on promotions
         as well as FRESNO's policy in placing
16         employees on administrative leave pending a
         fitness for duty examination, to which
17         DEFENDANT DYER was delegated final official
         policy making authority over.  In doing the
18         things it is alleged DEFENDANT DYER has done,
         DEFENDANT DYER used the aforementioned FRESNO
19         policies in retaliatory fashion to deprive
         NEVEAU of his rights as specifically alleged.

20 (Doc. 37, Third Am. Compl. ¶ 54)  It is not clear, based upon

21 these allegations, whether Plaintiff attempts to allege a claim

22 against the CITY for "a longstanding practice or custom" that led

23 to the alleged violation of Plaintiff's constitutional rights, or

24 whether Plaintiff attempts instead to allege a *Monell* claim

25 through one of the other two means, i.e., the constitutional

26 violation was caused by the act of an official with final

27 policymaking authority or by the ratification of unconstitutional

28 conduct of subordinates by an official with final policymaking

7

authority.  Liberally construed, Plaintiff's allegations appear
to be an attempt to allege a *Monell* claim in all three ways.

As to the first variation of a *Monell* claim, Defendant
argues that Plaintiff has failed to allege facts supporting the
existence of a policy.  Plaintiff's response is that he does
allege the existence of a policy, referring to the allegations
"in paragraph 54 of the Third Amended Complaint that Fresno
maintained policies on promotions as well as placing individuals
on administrative leave."  (Doc. 47, Pl.'s Mem. 5)

However, alleging that the CITY maintained official
employment policies is not a sufficient basis on which *Monell*
liability can be established.  Plaintiff does not describe what
these specific policies are (such as denying promotions to
officers who speak out), or how they were used to deprive
Plaintiff of his constitutional rights.  Plaintiff's *Monell*
claim against FRESNO in his Second Amended Complaint was
dismissed for the same deficiency.  (Doc. 35, July 2005 Order 30)

However, it can be inferred from Plaintiff's allegations
that he attempts to plead the existence of a custom or practice
of retaliation (i.e., one that is different from the CITY's
official employment policies).  Although Plaintiff does not make
this argument, such an attempt can be inferred from his
allegation that defendants WEST, FIFIELD, GUTHRIE, and GARNER
purposefully prevented Plaintiff from being promoted and that
they "had done similar 'black listing' to other officers who
spoke up."  (Doc. 37, Third Am. Compl. ¶ 43)  One isolated
reference to blacklisting is not sufficient; however, the claim
that other officers had been "blacklisted" for speaking out,

**8**

although general, is adequate to put defendants on notice of the claim.  Plaintiff claims that blacklisting was a custom or policy of the police department.

Plaintiff's complaint also contains various other factual allegations that could be construed as constituting a custom or practice.  For example, the complaint alleges:

(1)     After Plaintiff informed Captain WEST that he was going to report all sexual allegations or improprieties in writing to Internal Affairs, WEST told Plaintiff that "if [Plaintiff] wanted 'to play it that way,' and 'not be a team player' with them, that was his choice but there would be consequences."  (Doc. 37, Third Am. Compl. ¶ 28) The complaint does not describe what the "consequences" are and does not allege that the consequences were part of a custom or practice.

(2)     Sergeant Montejano advised Plaintiff that "he should not have documented the racial harassment because it caused staff at the Police Activity League to become upset, including retired Deputy Chief Lee Piscola, and that 'pissing off a retired Chief is a bad career move.'"  (*Id*. at ¶ 29) Again, there is no further explanation as to Retired Chief Piscola's involvement in or relationship to the purported retaliation against Plaintiff.  There is no allegation connecting Sergeant Montejano's comment to any purported

**9**

custom or practice.

    (3)    Chief DYER stated publicly "that he wanted control over who was promoted" and subsequently introduced a "practical phase" to the promotions process. Plaintiff alleges that the "practical phase" included giving the answers to promotional exams to those sergeants whom Chief DYER wanted promoted. (*Id*. at ¶¶ 32, 33) Plaintiff further alleges the complaints of other candidates regarding this practice led to a hearing before the Civil Service Commission at which Plaintiff testified. The defendants are required to draw the inference that such cheating on the promotional exams was part of the Chief's alleged custom or practice in failing to promote Plaintiff and others who were considered undesirable.

Neither the Defendants nor the court should be required to guess or add allegations to divine the substance of the policy, custom, or practice that forms the basis of Plaintiff's *Monell* claim. General notice pleading under Rule 8(a) requires only a short and plain statement of the facts. A complaint must, at the very least, allow Defendants to adequately respond to the allegations against them. Plaintiff's complaint contains references to the CITY's official employment policies, as well as to Plaintiff's circumstantial encounters with various defendants, and to "blacklisting" employees, these conclusory allegations

barely describe any policy, custom, or practice that is
implemented to effect constitutional inquiry.

In his opposition, Plaintiff argues that his complaint
sufficiently alleges a municipal liability claim against DYER
under the second variation by which a *Monell* claim can be
alleged, i.e., based on a single decision by an official with
final policymaking authority.  A litigant can establish a *Monell*
claim based upon a single action by a decision-making official
with final policymaking authority, *Pembaur v. City of Cincinnati*,
475 U.S. 469, 482-83 (1986).

Plaintiff's allegations relating to DYER's final policy-
making authority include the following circular sentence:

> The acts and omissions of DEFENDANT DYER, as
> alleged herein, manifested or conformed to
> official policies, customs, practices, or
> decisions of DEFENDANT FRESNO, in that FRESNO
> delegated to DYER its policy making authority
> in all matters of employment relations within
> the DEPARTMENT, and/or DEFENDANT FRESNO, with
> knowledge of the afore said [sic] policies,
> customs, practices and decisions of DEFENDANT
> DYER, approved, ratified, and adopted said
> policies, customs, practices and decisions.

(Doc. 37, Third Am. Compl. ¶ 54)  This requires defendants to
search for the underlying alleged "customs or policies."  With
respect to the CITY's official administrative leave policy,
Plaintiff alleges that "DYER used the aforementioned FRESNO
policies in retaliatory fashion to deprive NEVEU of his rights as
specifically alleged."  (*Id.*)

Defendants are left to infer that Plaintiff was deprived of
his first amendment constitutional rights by DYER's alleged
discriminatory placement of Plaintiff on administrative leave,
which became the CITY's policy because it was implemented by a

department head with policy-making authority.  Plaintiff alleges
that two officers in addition to DYER are responsible for having
placed Plaintiff on administrative leave, including ENMARK (the
deputy chief) and GUTHRIE (a lieutenant).  (Doc. 37, Third Am.
Compl. ¶ 45)

Plaintiff also argues that he states a *Monell* claim under
the variation, i.e., based on delegation of authority.  Plaintiff
alleges that the CITY delegated authority to DYER; but offers no
explanation how this is distinguishable from the allegation that
DYER had final policymaking authority for the CITY.  The third
variation of a *Monell* claim involves the situation where final
decision-making authority was delegated to subordinates.  *See*
*Menotti*, 409 F.3d at 1147.  Plaintiff's complaint contains no
allegations that DYER delegated final decision-making authority
to a subordinate.  Plaintiff's complaint does not state a *Monell*
claim in the third way.

Defendants' motion to dismiss Plaintiff's *Monell* claim
against the CITY is **DENIED**.


**B.   Whether Plaintiff States a Claim under Cal. Labor Code
§ 1102.5.**

Plaintiff's retaliation claim under Cal. Labor Code § 1102.5
was dismissed for lack of jurisdiction on the basis that
Plaintiff failed to allege that he exhausted available
administrative remedies, included but not limited to filing a
complaint with the Labor Commissioner.  (Doc. 35, July 2005 Order
33-35)  Plaintiff's Third Amended Complaint contains a claim
under Cal. Labor Code § 1102.5.  Defendants argue that their

12

1  motion to dismiss Plaintiff's § 1102.5 claim was granted without
2  leave to amend, and that Plaintiff brings this claim again in
3  violation of a previous court order.

4      Plaintiff argues that the court's order was ambiguous as to
5  whether leave to amend was allowed.  Defendants are correct in
6  that the July 2005 Order did not grant Plaintiff leave to amend.
7  Nevertheless, Plaintiff's opposition will be construed as a
8  request for leave to amend this claim.

9      Plaintiff argues in his opposition that "this Court
10 misapplied the ruling in *Campbell v. Regents of the Univ. of*
11 *Cal.*, 35 Cal. 4th 311 (2005).  Plaintiff misinterprets the
12 court's previous holding.  The July 2005 Order stated "Plaintiff
13 does not allege that he exhausted available administrative
14 remedies, including bringing a complaint before the Labor
15 Commissioner, before bringing suit."  (Doc. 35, July 2005 Order
16 35)  *Campbell* held, among other things, that despite § 1102.5's
17 silence on the issue whether a claimant must exhaust
18 administrative remedies before filing suit, California's
19 administrative exhaustion requirement nevertheless applies.  35
20 Cal. 4th at 329-30.  Plaintiff's Second Amended Complaint did not
21 allege that he exhausted *any* administrative remedies as to
22 § 1102.5, including filing a claim with the Labor Commissioner,
23 which is a remedy that is expressly available under Cal. Labor
24 Code § 98.7.[2]  (*See* Doc. 23, Second Am. Compl. ¶¶ 55-58)

25

26      [2] Plaintiff's argument that there is no procedure in place
in the Labor Commissioner's office to file such claims is
27 irrelevant.  The phone call placed by Plaintiff's counsel to the
Labor Commissioner's office is not properly judicially noticeable
28 under Federal Rule of Evidence 201.  Whether a phone call took

1    Plaintiff's Third Amended Complaint *does* contain an

2  allegation that he exhausted all available administrative

3  remedies.  While Plaintiff does not allege he filed a claim with

4  the Labor Commissioner, he does allege he filed a tort claim

5  pursuant to Cal. Govt. Code §§ 910, *et seq*.  Furthermore, he

6  alleges that the CITY has no internal administrative remedies

7  available that cover claims for retaliation under § 1102.5 and

8  that filing a government tort claim did exhaust all available

9  administrative remedies.  (Doc. 37, Third Am. Compl. ¶ 58)

10    While Defendant is technically correct that Plaintiff was

11  not granted leave to amend its § 1102.5 claim to allege

12  compliance with the exhaustion requirement, a policy underlying

13  federal civil procedure is that, absence prejudice to the

14  Defendant, leave to amend should be freely granted.  Fed. R. Civ.

15  P. 15(a) ("leave to amend shall be freely given when justice so

16  requires"); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316

17  F.3d 1048, 1051-52 (9th Cir. 2003).  Plaintiff is therefore

18  granted **LEAVE TO AMEND** his § 1102.5 claim.  Whether Plaintiff's

19  allegation that there were no adequate administrative remedies

20  for § 1102.5 claims (including but not limited to the practical

21  unavailability of filing a claim with the Labor Commissioner) is

22  a question of fact for the fact-finder.  At the pleading stage,

23  Plaintiff's allegation that there were no adequate internal

24

25  place and the substance of the phone call consists of the
    personal knowledge of counsel.  Such evidence is not "generally
26  known within the territorial jurisdiction" of this court, and is
    also not "capable of accurate and ready determination by resort
27  to sources whose accuracy cannot be reasonably questioned,"
    either of which are required by FRE 201.
28

**14**

administrative remedies and that he exhausted the only available administrative remedy (i.e., the filing of a government tort claim), is sufficient to survive a motion to dismiss. Defendants' motion to dismiss Plaintiffs' § 1102.5 claim is **DENIED.**

        **C.**    **Whether Plaintiff States a Claim Under Cal. Govt. Code § 53298.**

      Defendants argue that Plaintiff fails to state a claim against GARNER, FIFIELD, and WEST under Cal. Govt. Code § 53298. Plaintiff does not address this argument in his opposition.  At oral argument, Plaintiff's counsel acknowledged this claim should be dismissed.  Cal. Gov. Code § 53298(a) establishes liability for any local agency officer, manager, or supervisor who retaliates against any employee for filing a complaint with the local agency reporting "gross mismanagement, a significant waste of funds, an abuse of authority, or a specific and substantial danger to public health or safety."  Cal. Gov. Code §§ 53298(a), 53296(c); *see also LeVine*, 90 Cal. App. 4th at 212 (discussing § 53298 *in dicta*).  The written complaints that are the basis of Plaintiff's § 53298 claim are (1) written report(s) of sexual molestation by a former police officer; and (2) written report(s) of racial harassment.  (Doc. 37, Third Am. Compl. ¶ 60)  The only act of retaliation alleged in Plaintiff's § 53298 claim is placing Plaintiff on administrative leave.  (*See id.*)  Defendants argue that Plaintiffs' § 53298 claim should be dismissed as to WEST, FIFIELD, and GARNER, since they are only alleged to have played a role in the failure to promote Plaintiff and are not

15

1    alleged to have had a role in placing Plaintiff on administrative

2    leave.  Plaintiff does not dispute this argument.  Defendants'

3    motion to dismiss Plaintiff's § 1102.5 claim as to WEST, FIFIELD,

4    and GARNER is **GRANTED**.

5

6         D.  __Defendants' Rule 12(f) Motion to Strike.__

7         Fed. R. Civ. P. 12(f) provides that "redundant, immaterial,

8    impertinent, or scandalous matters" may be "stricken from any

9    pleading."  Fed. R. Civ. P. 12(f).  "[M]otions to strike should

10   not be granted unless it is clear that the matter to be stricken

11   could have no possible bearing on the subject matter of the

12   litigation."  *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp.

13   1335, 1339 (N.D. Cal. 1991) (citation omitted).  Defendants argue

14   that several allegations should be stricken from the Third

15   Amended Complaint.

16        First, Defendants' motion to strike the allegations in

17   paragraph 44 that the statute of limitations is tolled based upon

18   the continuing violations doctrine is **GRANTED.**  Plaintiff's

19   argument based on the tolling of the statute of limitations based

20   on the continuing violations doctrine was rejected.  (Doc. 35,

21   July 2005 Order 21-25)

22        Second, Defendants' motion to strike the allegation in

23   paragraph 54 (18:11) that Defendants violated Plaintiff's

24   Fourteenth Amendment rights is **GRANTED.**  Any claim based upon an

25   alleged violation of Plaintiff's Fourteenth Amendment rights has

26   been dismissed.  (*Id*. at 32-33)

27        Third, Defendants' motion to strike Plaintiff's § 1102.5

28   claim in paragraphs 55-58 is **MOOT,** as Defendants' motion to

1  dismiss Plaintiff's § 1102.5 claim is denied.

2

3                        **VI.   CONCLUSION**

4

5       For all the foregoing reasons Defendants':

6  (1)  motion to dismiss Plaintiff's 42 U.S.C. § 1983 claim against

7       the CITY is **DENIED;**

8  (2)  motion to dismiss Plaintiff's Cal. Labor Code § 1102.5 claim

9       is **DENIED;**

10 (3)  motion to dismiss Plaintiff's Cal. Govt. Code § 53298 claim

11      as to WEST, FIFIELD, and GARNER is **GRANTED;**

12 (4)  Rule 12(e) motion for a more definite statement is **MOOT;**

13 (5)  Rule 12(f) motion to strike is **GRANTED** as to the allegations

14      in paragraphs 44 and 54 (18:11), and is **DENIED** as to all

15      other allegations.

16

17 **SO ORDERED.**
   **DATED: October _8_, 2005.**

18
                              **/s/ Oliver W. Wanger**
19                    _____
                              **Oliver W. Wanger**
20                    **UNITED STATES DISTRICT JUDGE**

21

22

23

24

25

26

27

28

                              17