UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL NEVEAU,<br><br>          Plaintiff,<br><br>     v.<br><br>CITY OF FRESNO, a municipality;<br>JERRY DYER, individually;<br>MICHAEL GUTHRIE, individually;<br>GREG GARNER, individually;<br>DARREL FIFIELD, individually;<br>MARTY WEST, individually;<br>ROGER ENMARK, individually; and<br>DOES 1 through 10,<br><br>          Defendants.<br>_____ | 1:04-cv-06490   OWW JLD<br><br>AMENDED<br>MEMORANDUM DECISION AND<br>ORDER RE DEFENDANTS'<br><br>(1) MOTION TO DISMISS<br>PURSUANT TO FED. R. CIV. P.<br>12(b)(6);<br><br>(2) MOTION FOR A MORE<br>DEFINITE STATEMENT PURSUANT<br>TO FED. R. CIV. P. 12(e);<br>AND<br><br>(3) MOTION TO STRIKE<br>PORTIONS OF THE SECOND<br>AMENDED COMPLAINT PURSUANT<br>TO FED. R. CIV. P. 12(f). |

## I.  INTRODUCTION

This is a civil rights action by a City of Fresno police officer against the City of Fresno and several individual members of the City of Fresno Police Department.  Michael Neveu ("Plaintiff") brings a civil rights claim under 42 U.S.C. § 1983 and under two California state "whistleblower" statutes. Defendants CITY OF FRESNO, JERRY DYER, MICHAEL GUTHRIE, GREG

1

GARNER, DARREL FIFIELD, MARTY WEST, and ROGER ENMARK ("Defendants") move to dismiss Plaintiff's Third Amended Complaint.  (Doc. 41 Defs.' Mot.; Doc. 42, Defs.' Mem.) Plaintiff opposes the motion.  (Doc. 47, Pl.'s Opp.)

## II.   PROCEDURAL HISTORY

Plaintiff filed his original complaint on November 1, 2004. (Doc. 1, Compl.)  Plaintiff filed the operative Third Amended Complaint on July 25, 2005.  (Doc. 39, Third Am. Compl.) Plaintiff's Third Amended Complaint contains three claims, all which arise out of Plaintiff's complaint that Defendants retaliated against him for having reported sexual misconduct, racial harassment, and cheating on police department promotional exams: (1) 42 U.S.C. § 1983 (first amendment retaliation); (2) Cal. Labor Code § 1102.5 (whistleblower retaliation); and (3) Cal. Gov. Code § 53298 (whistleblower retaliation). Defendants seek to dismiss various claims and to strike allegations contained in the Third Amended Complaint.  (Doc. 42, Defs.' Mem.)  Plaintiff filed opposition on September 16, 2005. (Doc. 47, Pl.'s Opp.)  Defendants replied on September 26, 2005. (Doc. 48, Defs.' Reply)

Oral argument was heard on October 3, 2005.  Michael A. Morguess, Esq., appeared on behalf of Plaintiff.  Joseph D. Rubin, Esq., appeared on behalf of Defendants.

## III.   SUMMARY OF PLEADINGS

This civil rights action is brought by a Fresno City police officer against the City of Fresno, the Fresno Police Chief, and five individual Fresno City Police officers.  Plaintiff brings his § 1983 claim based on an alleged violation of his first amendment right to freedom of expression.  Plaintiff claims he was retaliated against for reporting to his superiors a number of incidents of sexual harassment, racial discrimination, and cheating on police department exams.  The allegations in the complaint are taken as true for the purpose of this motion to dismiss.

Plaintiff alleges two adverse employment actions.  First, from June 1997 through December 2002, Defendants WEST, FIFIELD, GUTHRIE, and GARNER failed to promote him despite his high qualifications and performance.  Second, in March 2004, Defendants DYER, ENMARK, and GUTHRIE placed Plaintiff on administrative leave and required Plaintiff to undergo psychological examinations to determine his fitness for duty. Despite the recommendations of three psychologists that he was fit for duty, Defendants refused to reinstate him to duty in July 2004.[1]

Plaintiff claims he was retaliated against for four allegedly protected first amendment activities.  These allegations are addressed in greater detail in the July 2005 order granting in part Defendants' motion to dismiss.  (Doc. 35, "July 2005 Order")  First, Plaintiff reported alleged sexual misconduct by Richard Mata, a suspended police department

---

[1] Plaintiff has since been reinstated to duty.

official who was under investigation for improper sexual behavior towards a minor.  Plaintiff alleges that Internal Affairs asked Plaintiff to report to their office in writing any information he obtained regarding Mata.  WEST instructed Plaintiff not to put any information regarding Mata in writing or report any information to Internal Affairs.  Instead, WEST instructed Plaintiff to report such information verbally to his chain of command.  Second, Plaintiff alleges that he reported to his immediate supervisors in writing racial discrimination against Southeast Asian police officers.  Third, Plaintiff submitted an end-of-the year report involving the "banking" of overtime hours. Fourth, Plaintiff testified at an administrative hearing regarding cheating on police promotional exams.

Plaintiff's complaint also contains allegations regarding the CITY's "policies, customs, practices and decisions" regarding promotions and administrative leave ("employment policies"). (*Id*. at ¶ 54)  Plaintiff alleges that Chief DYER had policy-making authority over the employment policies and that "DYER used the...FRESNO policies in retaliatory fashion to deprive NEVEU of his rights as specifically alleged."  (*Id*.)

## IV.  **LEGAL STANDARD**

Fed. R. Civ. P. 12(b)(6) allows a defendant to attack a complaint for failure to state a claim upon which relief can be granted.  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is disfavored and rarely granted: "[a] complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove

**4**

no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).  In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

"The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).  For example, matters of public record may be considered under Fed. R. Civ. P. 201, including pleadings, orders and other papers filed with the court or records of administrative bodies. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

### V. ANALYSIS

**A. Whether Plaintiff States a *Monell* Claim Against the CITY Under § 1983.**

Defendants argue that Plaintiff's § 1983 claim against the CITY should be dismissed because Plaintiff's factual allegations

5

are insufficient to support *Monell* liability under § 1983.

Under the Supreme Court's decision in *Monell v. Dep't of Soc. Svcs. of City of New York*, 436 U.S. 658, 694 (1978), a local government is liable under § 1983 for its policies that cause constitutional torts. *See also McMillian v. Monroe County*, 520 U.S. 781, 785 (1997). A suit against a local official in his "official capacity" is the same as a suit against the local governmental entity itself. *Id.* at 785 n. 2; *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) ("a suit against a state official in his official capacity is no different from a suit against the [official's office or the] State itself" (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989))); *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 524 n.3 (9th Cir. 1999).

A litigant can establish a *Monell* claim in one of three ways: "(1) by showing a longstanding practice or custom which constitutes the standard procedure of the local governmental entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotations omitted) (quoting *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 985-86 (9th Cir. 2002)).

As an initial matter, Plaintiff's allegations against Chief DYER and his allegations regarding the CITY's policies, customs,

**6**

and/or practices are confusing.  Paragraph 54 of Plaintiff's complaint alleges that:

> Chief DYER'S actions, as alleged herein, were taken as an official policy maker, and with the accompanying authority to which DEFENDANT FRESNO delegated its governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed.  The acts and omissions of DEFENDANT DYER, as alleged herein, manifested or conformed to official policies, customs, practices, or decisions of DEFENDANT FRESNO, in that FRESNO delegated to DYER its policy making authority in all matters of employment relations within the DEPARTMENT, and/or DEFENDANT FRESNO, with knowledge of the afore said [sic] policies, customs, practices and decisions of DEFENDANT DYER, approved, ratified and adopted said policies, customs, practices and decisions.  More specifically, DYER, as the Chief of Police, has final official policy making authority with respect to promotions within the Police Department, as well as placing officers on administrative leave and subjecting them to a fitness for duty examination.  Moreover, DEFENDANT DYER acted pursuant to FRESNO's policies on promotions as well as FRESNO's policy in placing employees on administrative leave pending a fitness for duty examination, to which DEFENDANT DYER was delegated final official policy making authority over.  In doing the things it is alleged DEFENDANT DYER has done, DEFENDANT DYER used the aforementioned FRESNO policies in retaliatory fashion to deprive NEVEAU of his rights as specifically alleged.

(Doc. 37, Third Am. Compl. ¶ 54)  It is not clear, based upon these allegations, whether Plaintiff attempts to allege a claim against the CITY for "a longstanding practice or custom" that led to the alleged violation of Plaintiff's constitutional rights, or whether Plaintiff attempts instead to allege a *Monell* claim through one of the other two means, i.e., the constitutional violation was caused by the act of an official with final policymaking authority or by the ratification of unconstitutional

conduct of subordinates by an official with final policymaking authority.  Liberally construed, Plaintiff's allegations appear to be an attempt to allege a *Monell* claim in all three ways.

As to the first variation of a *Monell* claim, Defendant argues that Plaintiff has failed to allege facts supporting the existence of a policy.  Plaintiff's response is that he does allege the existence of a policy, referring to the allegations "in paragraph 54 of the Third Amended Complaint that Fresno maintained policies on promotions as well as placing individuals on administrative leave."  (Doc. 47, Pl.'s Mem. 5)

However, alleging that the CITY maintained official employment policies is not a sufficient basis on which *Monell* liability can be established.  Plaintiff does not describe what these specific policies are (such as denying promotions to officers who speak out), or how they were used to deprive Plaintiff of his constitutional rights.  Plaintiff's *Monell* claim against FRESNO in his Second Amended Complaint was dismissed for the same deficiency.  (Doc. 35, July 2005 Order 30)

However, it can be inferred from Plaintiff's allegations that he attempts to plead the existence of a custom or practice of retaliation (i.e., one that is different from the CITY's official employment policies).  Although Plaintiff does not make this argument, such an attempt can be inferred from his allegation that defendants WEST, FIFIELD, GUTHRIE, and GARNER purposefully prevented Plaintiff from being promoted and that they "had done similar 'black listing' to other officers who spoke up."  (Doc. 37, Third Am. Compl. ¶ 43)  One isolated reference to blacklisting is not sufficient; however, the claim

8

that other officers had been "blacklisted" for speaking out, although general, is adequate to put defendants on notice of the claim. Plaintiff claims that blacklisting was a custom or policy of the police department.

Plaintiff's complaint also contains various other factual allegations that could be construed as constituting a custom or practice. For example, the complaint alleges:

(1) After Plaintiff informed Captain WEST that he was going to report all sexual allegations or improprieties in writing to Internal Affairs, WEST told Plaintiff that "if [Plaintiff] wanted 'to play it that way,' and 'not be a team player' with them, that was his choice but there would be consequences." (Doc. 37, Third Am. Compl. ¶ 28) The complaint does not describe what the "consequences" are and does not allege that the consequences were part of a custom or practice.

(2) Sergeant Montejano advised Plaintiff that "he should not have documented the racial harassment because it caused staff at the Police Activity League to become upset, including retired Deputy Chief Lee Piscola, and that 'pissing off a retired Chief is a bad career move.'" (*Id.* at ¶ 29) Again, there is no further explanation as to Retired Chief Piscola's involvement in or relationship to the purported retaliation against Plaintiff. There is no allegation connecting

9

**1**            Sergeant Montejano's comment to any purported
**2**            custom or practice.
**3**
**4**   (3)   Chief DYER stated publicly "that he wanted control
**5**         over who was promoted" and subsequently introduced
**6**         a "practical phase" to the promotions process.
**7**         Plaintiff alleges that the "practical phase"
**8**         included giving the answers to promotional exams
**9**         to those sergeants whom Chief DYER wanted
**10**        promoted. (*Id*. at ¶¶ 32, 33)  Plaintiff further
**11**        alleges the complaints of other candidates
**12**        regarding this practice led to a hearing before
**13**        the Civil Service Commission at which Plaintiff
**14**        testified.  The defendants are required to draw
**15**        the inference that such cheating on the
**16**        promotional exams was part of the Chief's alleged
**17**        custom or practice in failing to promote Plaintiff
**18**        and others who were considered undesirable.
**19**
**20**   Neither the Defendants nor the court should be required to
**21** guess or add allegations to divine the substance of the policy,
**22** custom, or practice that forms the basis of Plaintiff's *Monell*
**23** claim.  General notice pleading under Rule 8(a) requires only a
**24** short and plain statement of the facts.  A complaint must, at the
**25** very least, allow Defendants to adequately respond to the
**26** allegations against them.  Plaintiff's complaint contains
**27** references to the CITY's official employment policies, as well as
**28** to Plaintiff's circumstantial encounters with various defendants,

**10**

and to "blacklisting" employees, these conclusory allegations barely describe any policy, custom, or practice that is implemented to effect constitutional inquiry.

In his opposition, Plaintiff argues that his complaint sufficiently alleges a municipal liability claim against DYER under the second variation by which a *Monell* claim can be alleged, i.e., based on a single decision by an official with final policymaking authority.  A litigant can establish a *Monell* claim based upon a single action by a decision-making official with final policymaking authority, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986).

Plaintiff's allegations relating to DYER's final policy-making authority include the following circular sentence:

> The acts and omissions of DEFENDANT DYER, as alleged herein, manifested or conformed to official policies, customs, practices, or decisions of DEFENDANT FRESNO, in that FRESNO delegated to DYER its policy making authority in all matters of employment relations within the DEPARTMENT, and/or DEFENDANT FRESNO, with knowledge of the afore said [sic] policies, customs, practices and decisions of DEFENDANT DYER, approved, ratified, and adopted said policies, customs, practices and decisions.

(Doc. 37, Third Am. Compl. ¶ 54)  This requires defendants to search for the underlying alleged "customs or policies."  With respect to the CITY's official administrative leave policy, Plaintiff alleges that "DYER used the aforementioned FRESNO policies in retaliatory fashion to deprive NEVEU of his rights as specifically alleged."  (*Id.*)

Defendants are left to infer that Plaintiff was deprived of his first amendment constitutional rights by DYER's alleged discriminatory placement of Plaintiff on administrative leave,

**11**

which became the CITY's policy because it was implemented by a department head with policy-making authority.  Plaintiff alleges that two officers in addition to DYER are responsible for having placed Plaintiff on administrative leave, including ENMARK (the deputy chief) and GUTHRIE (a lieutenant).  (Doc. 37, Third Am. Compl. ¶ 45)

Plaintiff also argues that he states a *Monell* claim under the variation, i.e., based on delegation of authority.  Plaintiff alleges that the CITY delegated authority to DYER; but offers no explanation how this is distinguishable from the allegation that DYER had final policymaking authority for the CITY.  The third variation of a *Monell* claim involves the situation where final decision-making authority was delegated to subordinates.  *See Menotti*, 409 F.3d at 1147.  Plaintiff's complaint contains no allegations that DYER delegated final decision-making authority to a subordinate.  Plaintiff's complaint does not state a *Monell* claim in the third way.

Defendants' motion to dismiss Plaintiff's *Monell* claim against the CITY is **DENIED**.

B.  **Whether Plaintiff States a Claim under Cal. Labor Code § 1102.5.**

Plaintiff's retaliation claim under Cal. Labor Code § 1102.5 was dismissed for lack of jurisdiction on the basis that Plaintiff failed to allege that he exhausted available administrative remedies, included but not limited to filing a complaint with the Labor Commissioner.  (Doc. 35, July 2005 Order 33-35)  Plaintiff's Third Amended Complaint contains a claim

**12**

under Cal. Labor Code § 1102.5.  Defendants argue that their motion to dismiss Plaintiff's § 1102.5 claim was granted without leave to amend, and that Plaintiff brings this claim again in violation of a previous court order.

Plaintiff argues that the court's order was ambiguous as to whether leave to amend was allowed.  Defendants are correct in that the July 2005 Order did not grant Plaintiff leave to amend.  Nevertheless, Plaintiff's opposition will be construed as a request for leave to amend this claim.

Plaintiff argues in his opposition that "this Court misapplied the ruling in *Campbell v. Regents of the Univ. of Cal.*, 35 Cal. 4th 311 (2005).  Plaintiff misinterprets the court's previous holding.  The July 2005 Order stated "Plaintiff does not allege that he exhausted available administrative remedies, including bringing a complaint before the Labor Commissioner, before bringing suit."  (Doc. 35, July 2005 Order 35)  *Campbell* held, among other things, that despite § 1102.5's silence on the issue whether a claimant must exhaust administrative remedies before filing suit, California's administrative exhaustion requirement nevertheless applies.  35 Cal. 4th at 329-30.  Plaintiff's Second Amended Complaint did not allege that he exhausted *any* administrative remedies as to § 1102.5, including filing a claim with the Labor Commissioner, which is a remedy that is expressly available under Cal. Labor Code § 98.7.[2]  (*See* Doc. 23, Second Am. Compl. ¶¶ 55-58)

---

[2] Plaintiff's argument that there is no procedure in place in the Labor Commissioner's office to file such claims is irrelevant.  The phone call placed by Plaintiff's counsel to the

13

Plaintiff's Third Amended Complaint *does* contain an allegation that he exhausted all available administrative remedies.  While Plaintiff does not allege he filed a claim with the Labor Commissioner, he does allege he filed a tort claim pursuant to Cal. Govt. Code §§ 910, *et seq*.  Furthermore, he alleges that the CITY has no internal administrative remedies available that cover claims for retaliation under § 1102.5 and that filing a government tort claim did exhaust all available administrative remedies.  (Doc. 37, Third Am. Compl. ¶ 58)

While Defendant is technically correct that Plaintiff was not granted leave to amend its § 1102.5 claim to allege compliance with the exhaustion requirement, a policy underlying federal civil procedure is that, absence prejudice to the Defendant, leave to amend should be freely granted.  Fed. R. Civ. P. 15(a) ("leave to amend shall be freely given when justice so requires"); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003).  Plaintiff is therefore granted **LEAVE TO AMEND** his § 1102.5 claim.  Whether Plaintiff's allegation that there were no adequate administrative remedies for § 1102.5 claims (including but not limited to the practical unavailability of filing a claim with the Labor Commissioner) is a question of fact for the fact-finder.  At the pleading stage,

---

Labor Commissioner's office is not properly judicially noticeable under Federal Rule of Evidence 201.  Whether a phone call took place and the substance of the phone call consists of the personal knowledge of counsel.  Such evidence is not "generally known within the territorial jurisdiction" of this court, and is also not "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned," either of which are required by FRE 201.

Plaintiff's allegation that there were no adequate internal administrative remedies and that he exhausted the only available administrative remedy (i.e., the filing of a government tort claim), is sufficient to survive a motion to dismiss. Defendants' motion to dismiss Plaintiffs' § 1102.5 claim is **DENIED**.

### C. Whether Plaintiff States a Claim Under Cal. Govt. Code § 53298.

Defendants argue that Plaintiff fails to state a claim against GARNER, FIFIELD, and WEST under Cal. Govt. Code § 53298. Plaintiff does not address this argument in his opposition. At oral argument, Plaintiff's counsel acknowledged this claim should be dismissed. Cal. Gov. Code § 53298(a) establishes liability for any local agency officer, manager, or supervisor who retaliates against any employee for filing a complaint with the local agency reporting "gross mismanagement, a significant waste of funds, an abuse of authority, or a specific and substantial danger to public health or safety." Cal. Gov. Code §§ 53298(a), 53296(c); *see also LeVine*, 90 Cal. App. 4th at 212 (discussing § 53298 *in dicta*). The written complaints that are the basis of Plaintiff's § 53298 claim are (1) written report(s) of sexual molestation by a former police officer; and (2) written report(s) of racial harassment. (Doc. 37, Third Am. Compl. ¶ 60) The only act of retaliation alleged in Plaintiff's § 53298 claim is placing Plaintiff on administrative leave. (*See id*.) Defendants argue that Plaintiffs' § 53298 claim should be dismissed as to WEST, FIFIELD, and GARNER, since they are only alleged to have

15

played a role in the failure to promote Plaintiff and are not alleged to have had a role in placing Plaintiff on administrative leave.  Plaintiff does not dispute this argument.  Defendants' motion to dismiss Plaintiff's § 1102.5 claim as to WEST, FIFIELD, and GARNER is **GRANTED**.

### D. Defendants' Rule 12(f) Motion to Strike.

Fed. R. Civ. P. 12(f) provides that "redundant, immaterial, impertinent, or scandalous matters" may be "stricken from any pleading."  Fed. R. Civ. P. 12(f).  "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (citation omitted).  Defendants argue that several allegations should be stricken from the Third Amended Complaint.

First, Defendants' motion to strike the allegations in paragraph 44 that the statute of limitations is tolled based upon the continuing violations doctrine is **GRANTED**.  Plaintiff's argument based on the tolling of the statute of limitations based on the continuing violations doctrine was rejected.  (Doc. 35, July 2005 Order 21-25)

Second, Defendants' motion to strike the allegation in paragraph 54 (18:11) that Defendants violated Plaintiff's Fourteenth Amendment rights is **GRANTED**.  Any claim based upon an alleged violation of Plaintiff's Fourteenth Amendment rights has been dismissed.  (*Id*. at 32-33)

Third, Defendants' motion to strike Plaintiff's § 1102.5

**16**

claim in paragraphs 55-58 is **MOOT**, as Defendants' motion to dismiss Plaintiff's § 1102.5 claim is denied.

### VI.   CONCLUSION

For all the foregoing reasons Defendants':

(1) motion to dismiss Plaintiff's 42 U.S.C. § 1983 claim against the CITY is **DENIED**;

(2) motion to dismiss Plaintiff's Cal. Labor Code § 1102.5 claim is **GRANTED WITH LEAVE TO AMEND**;

(3) motion to dismiss Plaintiff's Cal. Govt. Code § 53298 claim as to WEST, FIFIELD, and GARNER is **GRANTED**;

(4) Rule 12(e) motion for a more definite statement is **MOOT**;

(5) Rule 12(f) motion to strike is **GRANTED** as to the allegations in paragraphs 44 and 54 (18:11), and is **DENIED** as to all other allegations.

Any amended complaint shall be filed within 20 days from service of this order.

**SO ORDERED.**
**DATED: October 12, 2005.**

                              **/s/ Oliver W. Wanger**
                              _____
                              **Oliver W. Wanger**
                          **UNITED STATES DISTRICT JUDGE**