1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF CALIFORNIA

7
                                    )
8   MICHAEL NEVEAU,                  )    1:04-cv-06490  OWW JLD
                                    )
9              Plaintiff,            )    SECOND AMENDED
                                    )    MEMORANDUM DECISION AND
10        v.                         )    ORDER RE DEFENDANTS'
                                    )
11  CITY OF FRESNO, a municipality;  )    (1) MOTION TO DISMISS
    JERRY DYER, individually;        )    PURSUANT TO FED. R. CIV. P.
12  MICHAEL GUTHRIE, individually;   )    12(b)(6);
    GREG GARNER, individually;       )
13  DARREL FIFIELD, individually;    )    (2) MOTION FOR A MORE
    MARTY WEST, individually;        )    DEFINITE STATEMENT PURSUANT
14  ROGER ENMARK, individually; and  )    TO FED. R. CIV. P. 12(e);
    DOES 1 through 10,               )    AND
15                                   )
                                    )    (3) MOTION TO STRIKE
16             Defendants.           )    PORTIONS OF THE SECOND
                                    )    AMENDED COMPLAINT PURSUANT
17  _____ )    TO FED. R. CIV. P. 12(f).

18

19

20
                    I.   INTRODUCTION
21

22       This is a civil rights action by a City of Fresno police

23  officer against the City of Fresno and several individual members

24  of the City of Fresno Police Department.  Michael Neveu

25  ("Plaintiff") brings a civil rights claim under 42 U.S.C. § 1983

26  and under two California state "whistleblower" statutes.

27  Defendants CITY OF FRESNO, JERRY DYER, MICHAEL GUTHRIE, GREG

28  GARNER, DARREL FIFIELD, MARTY WEST, and ROGER ENMARK

                              1

("Defendants") move to dismiss Plaintiff's Third Amended Complaint.  (Doc. 41 Defs.' Mot.; Doc. 42, Defs.' Mem.) Plaintiff opposes the motion.  (Doc. 47, Pl.'s Opp.)

## II.   PROCEDURAL HISTORY

Plaintiff filed his original complaint on November 1, 2004. (Doc. 1, Compl.)  Plaintiff filed the operative Third Amended Complaint on July 25, 2005.  (Doc. 39, Third Am. Compl.) Plaintiff's Third Amended Complaint contains three claims, all which arise out of Plaintiff's complaint that Defendants retaliated against him for having reported sexual misconduct, racial harassment, and cheating on police department promotional exams: (1) 42 U.S.C. § 1983 (first amendment retaliation); (2) Cal. Labor Code § 1102.5 (whistleblower retaliation); and (3) Cal. Gov. Code § 53298 (whistleblower retaliation). Defendants seek to dismiss various claims and to strike allegations contained in the Third Amended Complaint.  (Doc. 42, Defs.' Mem.)  Plaintiff filed opposition on September 16, 2005. (Doc. 47, Pl.'s Opp.)  Defendants replied on September 26, 2005. (Doc. 48, Defs.' Reply)

Oral argument was heard on October 3, 2005.  Michael A. Morguess, Esq., appeared on behalf of Plaintiff.  Joseph D. Rubin, Esq., appeared on behalf of Defendants.

## III.   SUMMARY OF PLEADINGS

This civil rights action is brought by a Fresno City police officer against the City of Fresno, the Fresno Police Chief, and five individual Fresno City Police officers.  Plaintiff brings

**2**

his § 1983 claim based on an alleged violation of his first amendment right to freedom of expression.  Plaintiff claims he was retaliated against for reporting to his superiors a number of incidents of sexual harassment, racial discrimination, and cheating on police department exams.  The allegations in the complaint are taken as true for the purpose of this motion to dismiss.

Plaintiff alleges two adverse employment actions.  First, from June 1997 through December 2002, Defendants WEST, FIFIELD, GUTHRIE, and GARNER failed to promote him despite his high qualifications and performance.  Second, in March 2004, Defendants DYER, ENMARK, and GUTHRIE placed Plaintiff on administrative leave and required Plaintiff to undergo psychological examinations to determine his fitness for duty. Despite the recommendations of three psychologists that he was fit for duty, Defendants refused to reinstate him to duty in July 2004.[1]

Plaintiff claims he was retaliated against for four allegedly protected first amendment activities.  These allegations are addressed in greater detail in the July 2005 order granting in part Defendants' motion to dismiss.  (Doc. 35, "July 2005 Order")  First, Plaintiff reported alleged sexual misconduct by Richard Mata, a suspended police department official who was under investigation for improper sexual behavior towards a minor.  Plaintiff alleges that Internal Affairs asked Plaintiff to report to their office in writing any information he

---

[1] Plaintiff has since been reinstated to duty.

obtained regarding Mata.  WEST instructed Plaintiff not to put

any information regarding Mata in writing or report any

information to Internal Affairs.  Instead, WEST instructed

Plaintiff to report such information verbally to his chain of

command.  Second, Plaintiff alleges that he reported to his

immediate supervisors in writing racial discrimination against

Southeast Asian police officers.  Third, Plaintiff submitted an

end-of-the year report involving the "banking" of overtime hours.

Fourth, Plaintiff testified at an administrative hearing

regarding cheating on police promotional exams.

Plaintiff's complaint also contains allegations regarding

the CITY's "policies, customs, practices and decisions" regarding

promotions and administrative leave ("employment policies").

(*Id.* at ¶ 54)  Plaintiff alleges that Chief DYER had policy-

making authority over the employment policies and that "DYER used

the...FRESNO policies in retaliatory fashion to deprive NEVEU of

his rights as specifically alleged."  (*Id.*)


## IV.  LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) allows a defendant to attack a

complaint for failure to state a claim upon which relief can be

granted.  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is

disfavored and rarely granted: "[a] complaint should not be

dismissed unless it appears beyond doubt that plaintiff can prove

no set of facts in support of his claim which would entitle him

to relief."  *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980

(9th Cir. 2002) (citations omitted).  In deciding whether to

grant a motion to dismiss, the court "accept[s] all factual

**4**

allegations of the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

"The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).  For example, matters of public record may be considered under Fed. R. Civ. P. 201, including pleadings, orders and other papers filed with the court or records of administrative bodies. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## V.   **ANALYSIS**

### A.   **Whether Plaintiff States a *Monell* Claim Against the CITY Under § 1983.**

Defendants argue that Plaintiff's § 1983 claim against the CITY should be dismissed because Plaintiff's factual allegations are insufficient to support *Monell* liability under § 1983.

Under the Supreme Court's decision in *Monell v. Dep't of Soc. Svcs. of City of New York*, 436 U.S. 658, 694 (1978), a local government is liable under § 1983 for its policies that cause

**5**

constitutional torts.  *See also McMillian v. Monroe County*, 520
U.S. 781, 785 (1997).  A suit against a local official in his
"official capacity" is the same as a suit against the local
governmental entity itself.  *Id.* at 785 n. 2; *Doe v. Lawrence
Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) ("a suit
against a state official in his official capacity is no different
from a suit against the [official's office or the] State itself"
(citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71
(1989))); *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 524 n.3
(9th Cir. 1999).

A litigant can establish a *Monell* claim in one of three
ways:  "(1) by showing a longstanding practice or custom which
constitutes the standard procedure of the local governmental
entity; (2) by showing that the decision-making official was, as
a matter of state law, a final policymaking authority whose
edicts or acts may fairly be said to represent official policy in
the area of decision; or (3) by showing that an official with
final policymaking authority either delegated that authority to,
or ratified the decision of, a subordinate." *Menotti v. City of
Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotations
omitted) (quoting *Ulrich v. City and County of San Francisco*, 308
F.3d 968, 985-86 (9th Cir. 2002)).

As an initial matter, Plaintiff's allegations against Chief
DYER and his allegations regarding the CITY's policies, customs,
and/or practices are confusing.  Paragraph 54 of Plaintiff's
complaint alleges that:

> Chief DYER'S actions, as alleged herein, were
> taken as an official policy maker, and with
> the accompanying authority to which DEFENDANT

**6**

FRESNO delegated its governing powers in the
subject matter areas in which these policies
were promulgated or decisions taken or
customs and practices followed.  The acts and
omissions of DEFENDANT DYER, as alleged
herein, manifested or conformed to official
policies, customs, practices, or decisions of
DEFENDANT FRESNO, in that FRESNO delegated to
DYER its policy making authority in all
matters of employment relations within the
DEPARTMENT, and/or DEFENDANT FRESNO, with
knowledge of the afore said [sic] policies,
customs, practices and decisions of DEFENDANT
DYER, approved, ratified and adopted said
policies, customs, practices and decisions.
More specifically, DYER, as the Chief of
Police, has final official policy making
authority with respect to promotions within
the Police Department, as well as placing
officers on administrative leave and
subjecting them to a fitness for duty
examination.  Moreover, DEFENDANT DYER acted
pursuant to FRESNO's policies on promotions
as well as FRESNO's policy in placing
employees on administrative leave pending a
fitness for duty examination, to which
DEFENDANT DYER was delegated final official
policy making authority over.  In doing the
things it is alleged DEFENDANT DYER has done,
DEFENDANT DYER used the aforementioned FRESNO
policies in retaliatory fashion to deprive
NEVEAU of his rights as specifically alleged.

(Doc. 37, Third Am. Compl. ¶ 54)  It is not clear, based upon
these allegations, whether Plaintiff attempts to allege a claim
against the CITY for "a longstanding practice or custom" that led
to the alleged violation of Plaintiff's constitutional rights, or
whether Plaintiff attempts instead to allege a *Monell* claim
through one of the other two means, i.e., the constitutional
violation was caused by the act of an official with final
policymaking authority or by the ratification of unconstitutional
conduct of subordinates by an official with final policymaking
authority.  Liberally construed, Plaintiff's allegations appear
to be an attempt to allege a *Monell* claim in all three ways.

As to the first variation of a *Monell* claim, Defendant argues that Plaintiff has failed to allege facts supporting the existence of a policy.  Plaintiff's response is that he does allege the existence of a policy, referring to the allegations "in paragraph 54 of the Third Amended Complaint that Fresno maintained policies on promotions as well as placing individuals on administrative leave."  (Doc. 47, Pl.'s Mem. 5)

However, alleging that the CITY maintained official employment policies is not a sufficient basis on which *Monell* liability can be established.  Plaintiff does not describe what these specific policies are (such as denying promotions to officers who speak out), or how they were used to deprive Plaintiff of his constitutional rights.  Plaintiff's *Monell* claim against FRESNO in his Second Amended Complaint was dismissed for the same deficiency.  (Doc. 35, July 2005 Order 30)

However, it can be inferred from Plaintiff's allegations that he attempts to plead the existence of a custom or practice of retaliation (i.e., one that is different from the CITY's official employment policies).  Although Plaintiff does not make this argument, such an attempt can be inferred from his allegation that defendants WEST, FIFIELD, GUTHRIE, and GARNER purposefully prevented Plaintiff from being promoted and that they "had done similar 'black listing' to other officers who spoke up."  (Doc. 37, Third Am. Compl. ¶ 43)  One isolated reference to blacklisting is not sufficient; however, the claim that other officers had been "blacklisted" for speaking out, although general, is adequate to put defendants on notice of Plaintiff's claim that blacklisting was a custom or policy of the

**8**

police department.

Plaintiff's complaint also contains various other factual allegations that could be construed as constituting a custom or practice.  For example, the complaint alleges:

(1)  After Plaintiff informed Captain WEST that he was going to report all sexual allegations or improprieties in writing to Internal Affairs, WEST told Plaintiff that "if [Plaintiff] wanted 'to play it that way,' and 'not be a team player' with them, that was his choice but there would be consequences."  (Doc. 37, Third Am. Compl. ¶ 28) The complaint does not describe what the "consequences" are and does not allege that the consequences were part of a custom or practice.

(2)  Sergeant Montejano advised Plaintiff that "he should not have documented the racial harassment because it caused staff at the Police Activity League to become upset, including retired Deputy Chief Lee Piscola, and that 'pissing off a retired Chief is a bad career move.'"  (*Id.* at ¶ 29) Again, there is no further explanation as to Retired Chief Piscola's involvement in or relationship to the purported retaliation against Plaintiff.  There is no allegation connecting Sergeant Montejano's comment to any purported custom or practice.

(3)   Chief DYER stated publicly "that he wanted control over who was promoted" and subsequently introduced a "practical phase" to the promotions process. Plaintiff alleges that the "practical phase" included giving the answers to promotional exams to those sergeants whom Chief DYER wanted promoted. (*Id*. at ¶¶ 32, 33)  Plaintiff further alleges the complaints of other candidates regarding this practice led to a hearing before the Civil Service Commission at which Plaintiff testified.  The defendants are required to draw the inference that such cheating on the promotional exams was part of the Chief's alleged custom or practice in failing to promote Plaintiff and others who were considered undesirable.

Neither the Defendants nor the court should be required to guess or add allegations to divine the substance of the policy, custom, or practice that forms the basis of Plaintiff's *Monell* claim.  Nevertheless, general notice pleading under Rule 8(a) requires only a short and plain statement of the facts and a claim should not be dismissed if it will permit Defendants to adequately respond to the allegations against them.

Plaintiff's allegation concerning blacklisting and promotional preferences satisfies the minimal pleading standards.

Plaintiff's complaint also sufficiently alleges a municipal liability claim against DYER under the second variation by which a *Monell* claim can be alleged, i.e., based on a single decision

1  by an official with final policymaking authority.  A litigant can

2  establish a *Monell* claim based upon a single action by a

3  decision-making official with final policymaking authority,

4  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986).

5  Plaintiff's allegations relating to DYER's final policy-making

6  authority include the following circular sentence:

7          The acts and omissions of DEFENDANT DYER, as
           alleged herein, manifested or conformed to
8          official policies, customs, practices, or
           decisions of DEFENDANT FRESNO, in that FRESNO
9          delegated to DYER its policy making authority
           in all matters of employment relations within
10         the DEPARTMENT, and/or DEFENDANT FRESNO, with
           knowledge of the afore said [sic] policies,
11         customs, practices and decisions of DEFENDANT
           DYER, approved, ratified, and adopted said
12         policies, customs, practices and decisions.

13  (Doc. 37, Third Am. Compl. ¶ 54) In can be inferred from this

14  allegation that Plaintiff was deprived of his first amendment

15  constitutional rights by DYER's alleged discriminatory placement

16  of Plaintiff on administrative leave, which became the CITY's

17  policy because it was implemented by a department head with

18  policy-making authority.  Plaintiff alleges that two officers in

19  addition to DYER are responsible for having placed Plaintiff on

20  administrative leave, including ENMARK (the deputy chief) and

21  GUTHRIE (a lieutenant).  (Doc. 37, Third Am. Compl. ¶ 45)

22  Although this allegation is inartfully crafted, it does satisfy

23  the second variation of *Monell*.  *See Pembaur,* 475 U.S. at 482-83.

24  The decision to place Plaintiff on administrative leave was made

25  by an official with final policy-making authority.  No more is

26  required at the motion to dismiss stage.

27      Plaintiff also argues that he states a *Monell* claim under

28  the third variation, i.e., based on delegation of authority.  The

11

third variation of a *Monell* claim involves the situation where
final decision-making authority was delegated to subordinates.
*See Menotti*, 409 F.3d at 1147.  Plaintiff alleges that the CITY
delegated authority to DYER; but offers no explanation how this
is distinguishable from the allegation that DYER had final
policymaking authority for the CITY.  Plaintiff's complaint
contains no allegations that DYER delegated final decision-making
authority to a subordinate.  Plaintiff's complaint does not state
this form of a *Monell* claim.

Accordingly, because the complaint alleges that blacklisting
preferential promotion was an official policy and custom of the
City and that Plaintiff was placed on administrative leave by an
official with final policy-making authority, Plaintiff has
alleged a *Monell* claim sufficient to survive this motion to
dismiss.  Defendants' motion to dismiss Plaintiff's *Monell* claim
against the CITY is **DENIED**.

> **B.   Whether Plaintiff States a Claim under Cal. Labor Code
> § 1102.5.**

Plaintiff's retaliation claim under Cal. Labor Code § 1102.5
was dismissed for lack of jurisdiction on the basis that
Plaintiff failed to allege that he exhausted available
administrative remedies, included but not limited to filing a
complaint with the Labor Commissioner.  (Doc. 35, July 2005 Order
33-35)  Plaintiff's Third Amended Complaint contains a claim
under Cal. Labor Code § 1102.5.  Defendants argue that their
motion to dismiss Plaintiff's § 1102.5 claim was granted without
leave to amend, and that Plaintiff brings this claim again in

violation of a previous court order.

Plaintiff argues that the court's order was ambiguous as to whether leave to amend was allowed.  Defendants are correct in that the July 2005 Order did not grant Plaintiff leave to amend. Nevertheless, Plaintiff's opposition will be construed as a request for leave to amend this claim.

Plaintiff argues in his opposition that "this Court misapplied the ruling in *Campbell v. Regents of the Univ. of Cal.*, 35 Cal. 4th 311 (2005).  Plaintiff misinterprets the court's previous holding.  The July 2005 Order stated "Plaintiff does not allege that he exhausted available administrative remedies, including bringing a complaint before the Labor Commissioner, before bringing suit."  (Doc. 35, July 2005 Order 35)  *Campbell* held, among other things, that despite § 1102.5's silence on the issue whether a claimant must exhaust administrative remedies before filing suit, California's administrative exhaustion requirement nevertheless applies.  35 Cal. 4th at 329-30.  Plaintiff's Second Amended Complaint did not allege that he exhausted *any* administrative remedies as to § 1102.5, including filing a claim with the Labor Commissioner, which is a remedy that is expressly available under Cal. Labor Code § 98.7.[2]  (*See* Doc. 23, Second Am. Compl. ¶¶ 55-58)

---

[2] Plaintiff's argument that there is no procedure in place in the Labor Commissioner's office to file such claims is irrelevant.  The phone call placed by Plaintiff's counsel to the Labor Commissioner's office is not properly judicially noticeable under Federal Rule of Evidence 201.  Whether a phone call took place and the substance of the phone call consists of the personal knowledge of counsel.  Such evidence is not "generally known within the territorial jurisdiction" of this court, and is also not "capable of accurate and ready determination by resort

1    Plaintiff's Third Amended Complaint *does* contain an

2    allegation that he exhausted all available administrative

3    remedies.  While Plaintiff does not allege he filed a claim with

4    the Labor Commissioner, he does allege he filed a tort claim

5    pursuant to Cal. Govt. Code §§ 910, *et seq*.  Furthermore, he

6    alleges that the CITY has no internal administrative remedies

7    available that cover claims for retaliation under § 1102.5 and

8    that filing a government tort claim did exhaust all available

9    administrative remedies.  (Doc. 37, Third Am. Compl. ¶ 58)

10    While Defendant is technically correct that Plaintiff was

11    not granted leave to amend its § 1102.5 claim to allege

12    compliance with the exhaustion requirement, a policy underlying

13    federal civil procedure is that, absence prejudice to the

14    Defendant, leave to amend should be freely granted.  Fed. R. Civ.

15    P. 15(a) ("leave to amend shall be freely given when justice so

16    requires"); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316

17    F.3d 1048, 1051-52 (9th Cir. 2003).  Leave to amend is therefore

18    **GRANTED.   However, because there is no independent reason for**

19    **Plaintiff to file yet another amended complaint, the § 1102.5**

20    **claim will stand as currently pled in the Third Amended**

21    **Complaint.**

22    Whether Plaintiff's allegation that there were no adequate

23    administrative remedies for § 1102.5 claims (including but not

24    limited to the practical unavailability of filing a claim with

25    the Labor Commissioner) is a question of fact for the fact-

26    finder.  At the pleading stage, Plaintiff's allegation that there

27

28    to sources whose accuracy cannot be reasonably questioned,"
either of which are required by FRE 201.

**14**

were no adequate internal administrative remedies and that he
exhausted the only available administrative remedy (i.e., the
filing of a government tort claim), is sufficient to survive a
motion to dismiss.  Defendants' motion to dismiss Plaintiffs'
§ 1102.5 claim is **DENIED**.

C.   **Whether Plaintiff States a Claim Under Cal. Govt. Code
     § 53298.**

Defendants argue that Plaintiff fails to state a claim
against GARNER, FIFIELD, and WEST under Cal. Govt. Code § 53298.
Plaintiff does not address this argument in his opposition.  At
oral argument, Plaintiff's counsel acknowledged this claim should
be dismissed.  Cal. Gov. Code § 53298(a) establishes liability
for any local agency officer, manager, or supervisor who
retaliates against any employee for filing a complaint with the
local agency reporting "gross mismanagement, a significant waste
of funds, an abuse of authority, or a specific and substantial
danger to public health or safety."  Cal. Gov. Code §§ 53298(a),
53296(c); *see also LeVine*, 90 Cal. App. 4th at 212 (discussing
§ 53298 *in dicta*).  The written complaints that are the basis of
Plaintiff's § 53298 claim are (1) written report(s) of sexual
molestation by a former police officer; and (2) written report(s)
of racial harassment.  (Doc. 37, Third Am. Compl. ¶ 60)  The only
act of retaliation alleged in Plaintiff's § 53298 claim is
placing Plaintiff on administrative leave.  (*See id*.)  Defendants
argue that Plaintiffs' § 53298 claim should be dismissed as to
WEST, FIFIELD, and GARNER, since they are only alleged to have
played a role in the failure to promote Plaintiff and are not
alleged to have had a role in placing Plaintiff on administrative

15

1  leave.  Plaintiff does not dispute this argument.  Defendants'
2  motion to dismiss Plaintiff's § 1102.5 claim as to WEST, FIFIELD,
3  and GARNER is **GRANTED**.

4

5      D.   <u>**Motion for a More Definite Statement Pursuant to Fed.**</u>
6           <u>**R. Civ. P. 12(e)**</u>.

7       A motion for a more definite statement pursuant to Fed. R.
8  Civ. P. 12(e) attacks the unintelligibility of the complaint, not
9  simply the mere lack of detail, and is only proper when a party
10 is unable to determine how to frame a response to the issues
11 raised by the complaint.  A court will deny the motion where the
12 complaint is specific enough to apprise the defendant of the
13 substance of the claim being asserted.  *Bureerong v. Uvawas*,
14 922 F. Supp. 1450, 1461 (C.D. Cal. 1996); *see also Famolare, Inc.*
15 *v. Edison Bros. Stores*, Inc., 525 F. Supp. 940, 949 (E.D. Cal.
16 1981) (finding a Rule 12(e) motion proper "only where the
17 complaint is so indefinite that the defendant cannot ascertain
18 the nature of the claim being asserted").  A motion for a more
19 definite statement is proper only where the complaint is "so
20 vague or ambiguous that the opposing party cannot respond, even
21 with a simple denial, in good faith or without prejudice to
22 himself."  *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D.
23 575, 578 (N.D. Cal. 1999) (internal quotations and citation
24 omitted); *see also Sagan v. Apple Computer Inc.*, 874 F. Supp.
25 1072, 1077 (C.D. Cal. 1994) (citing *Van Dyke Ford, Inc. v. Ford*,
26 399 F. Supp. 277, 284 (E.D. Wis. 1975)) ("A Rule 12(e) motion is
27 more likely to be granted where the complaint is so general that
28 ambiguity arises in determining the nature of the claim or the

**16**

parties against whom it is being made."); *Boxall v. Sequoia Union High Sch. Dist.*, 464 F. Supp. 1104, 1114 (N.D. Cal. 1979) (finding a motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading). A Rule 12(e) motion "is likely to be denied where the substance of the claim has been alleged, even though some of the details are omitted." *Sagan*, 874 F. Supp. at 1077 (citing *Boxall*, 464 F. Supp. at 1113-14).

This liberal standard of pleading is consistent with Fed. R. Civ. P. 8(a)(2) which allows pleadings that contain a "short and plain statement of the claim." Both rules assume that the parties will familiarize themselves with the claims and ultimate facts through the discovery process. *See Sagan*, 874 F. Supp. at 1077 ("Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules."). If the detail sought by a motion for a more definite statement is obtainable through discovery, the motion should be denied. *See McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996) (granting 12(e) motion where complaint "does not provide defendants with a fair opportunity to frame a responsive pleading"); *see also Sagan*, 874 F. Supp. at 1077 ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted."); *Beery v. Hitachi Home Elec. (Amer.), Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993) (finding motion for a more definite statement should be denied if the detail sought is obtainable through discovery); *Federal Savings and Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1060 (N.D. Cal. 1988) (finding that if plaintiff's

complaint meets the notice requirements of Fed. R. Civ. P. 8, and defendants are provided with a sufficient basis to respond, the proper avenue for eliciting additional detail is through discovery); *Famolare, Inc. v. Edison Brothers Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981) ("A motion for a more definite statement should not be granted unless the defendant cannot frame a responsive pleading."); *CMAX, Inc. v. Hall*, 290 F.2d 736, 738 (9th Cir. 1961).

Here, the complaint, although somewhat unclear, provides enough detail for Defendants to frame a response and for this case to proceed.  Defendants' motion for a more definite statement is **DENIED**.

### E.   Defendants' Rule 12(f) Motion to Strike.

Fed. R. Civ. P. 12(f) provides that "redundant, immaterial, impertinent, or scandalous matters" may be "stricken from any pleading."  Fed. R. Civ. P. 12(f).  "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (citation omitted).  Defendants argue that several allegations should be stricken from the Third Amended Complaint.

First, Defendants' motion to strike the allegations in paragraph 44 that the statute of limitations is tolled based upon the continuing violations doctrine is **GRANTED**.  Plaintiff's argument based on the tolling of the statute of limitations based on the continuing violations doctrine was rejected.  (Doc. 35,

1   July 2005 Order 21-25)

2       Second, Defendants' motion to strike the allegation in

3   paragraph 54 (18:11) that Defendants violated Plaintiff's

4   Fourteenth Amendment rights is **GRANTED.**   Any claim based upon an

5   alleged violation of Plaintiff's Fourteenth Amendment rights has

6   been dismissed.  (*Id.* at 32-33)

7       Third, Defendants' motion to strike Plaintiff's § 1102.5

8   claim in paragraphs 55-58 is **MOOT,** as Defendants' motion to

9   dismiss Plaintiff's § 1102.5 claim is denied.

10

11                     **VI.   CONCLUSION**

12       For all the foregoing reasons Defendants':

13  (1)  motion to dismiss Plaintiff's 42 U.S.C. § 1983 claim against

14       the CITY is **DENIED;**

15  (2)  motion to dismiss Plaintiff's Cal. Labor Code § 1102.5 claim

16       is **DENIED;**

17  (3)  motion to dismiss Plaintiff's Cal. Govt. Code § 53298 claim

18       as to WEST, FIFIELD, and GARNER is **GRANTED;**

19  (4)  Rule 12(e) motion for a more definite statement is **DENIED;**

20  (5)  Rule 12(f) motion to strike is **GRANTED** as to the allegations

21       in paragraphs 44 and 54 (18:11), and is **DENIED** as to all

22       other allegations.

23

24

25  **SO ORDERED.**

26  **October 17, 2005**

27                              **/s/ Oliver W. Wanger**

28                              _____
                                     **Oliver W. Wanger**
                                **UNITED STATES DISTRICT JUDGE**

**19**