**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| MICHAEL NEVEU, | ) | No. CV-F-04-6490 OWW/WMW |
| | ) | |
| | ) | ORDER GRANTING DEFENDANTS |
| | ) | DYER AND GARNER'S MOTIONS |
| Plaintiff, | ) | FOR SUMMARY JUDGMENT [DOCS. |
| | ) | 66 & 100] AND GRANTING IN |
| vs. | ) | PART AND DENYING PART |
| | ) | DEFENDANTS' GUTHRIE, ENMARK |
| | ) | WEST, AND CITY OF FRESNO |
| CITY OF FRESNO, et al., | ) | RESPECTIVE MOTIONS FOR |
| | ) | SUMMARY JUDGMENT [DOCS. 97, |
| | ) | 103, 106 & 110] |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Before the Court are the respective motions for summary
judgment filed by Defendants City of Fresno; Jerry Dyer; Michael
Guthrie; Greg Garner; Marty West; and Roger Enmark.  Oral
argument on these motions was held on July 31, 2007.

At the hearing on July 31, 2007, summary judgment was
granted in favor of Defendants Jerry Dyer and Greg Garner on the
grounds that Plaintiff had no admissible evidence that either of
these Defendants participated in the actions of which Plaintiff

1

complains and that specific facts admitted by Plaintiff compelled summary judgment.  The Court intends its oral rulings as articulated at the July 31, 2007 hearing to be its statement of decision in granting summary judgment for Defendants Dyer and Garner.

I.   Governing Standards.

Summary judgment is proper when it is shown that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  A fact is "material" if it is relevant to an element of a claim or a defense, the existence of which may affect the outcome of the suit.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  Materiality is determined by the substantive law governing a claim or a defense.  *Id.*  The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party.  *Id.*

Even though neither Plaintiff has filed an opposition to Defendants' motion as required by Rule 56-260, Local Rules of Practice, summary judgment may not be granted on that ground alone.  *See Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir.1993).  The initial burden in a motion for summary judgment is on the moving party.  The moving party satisfies this initial burden by identifying the parts of the materials on file it believes demonstrate an "absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 325 (1986).  The burden then shifts to the nonmoving party to defeat summary judgment.  *T.W. Elec.*, 809 F.2d at 630.  The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial."  *Id*.  The nonmoving party may not simply state that it will discredit the moving party's evidence at trial; it must produce at least some "significant probative evidence tending to support the complaint."  *Id*.  A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence.  *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir.2000).  As explained in *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001):

> [T]he district court may determine whether there is a genuine issue of material fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers.  Though the court has discretion in appropriate circumstances to consider other materials, it need not do so.  The district court need not examine the entire file for evidence establishing a genuine issue of material fact, where the evidence is not set forth in the opposing papers with adequate references to that it could conveniently be found.

The question to be resolved is not whether the "evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the

3

evidence presented." *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir.1995).  This requires more than the "mere existence of a scintilla of evidence in support of the plaintiff's position"; there must be "evidence on which the jury could reasonably find for the plaintiff."  *Id.*  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment."  *Id.*

II.  <u>Count One - Violation of First Amendment to United States Constitution</u>.

Plaintiff alleges that the actions taken against him by Defendants Michael Guthrie, Marty West, and Roger Enmark were in retaliation for Plaintiff's exercise of First Amendment right of freedom of expression for having reported sexual misconduct, racial harassment, and cheating on police department promotional exams.

A.  <u>Elements of Claim</u>.

In order to prevail on this First Amendment claim, Plaintiff must establish (1) that he engaged in protected speech; (2) that Defendants took adverse employment actions; and (3) that his speech was a substantial or motivating factor for the adverse employment actions.  *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir.2003).

"The inquiry into the protected status of speech is one of law, not fact."  *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983); *see also Rendish v. City of Tacoma*, 123 F.3d 1216, 1223 (9th

4

Cir.1997), *cert. denied*, 524 U.S. 952 (1998).


   1.  <u>Constitutionally Protected Speech</u>.

   Critical to determination whether Plaintiff engaged in protected speech is *Garcetti v. Ceballos*, ___ U.S. ___, 126 S.Ct. 1951 (2006).

   In *Ceballos*, Ceballos, a deputy district attorney for the Los Angeles District Attorney's Office, filed a Section 1983 action against the County and his supervisors at the District Attorney's Office alleging that he was subjected to adverse employment actions in retaliation for engaging in protected speech, i.e., for writing a disposition memorandum in which he recommended dismissal of a case on the basis of purported government misconduct in preparing a critical search warrant affidavit.  After reviewing prior cases, the Supreme Court stated:

> The Court's decisions ... have sought both to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important social functions ... Underlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it does not employer them to 'constitutionalize the employee grievance.'
> ....

126 S.Ct. at 1959.  Considering these principles, the Supreme Court held that the facts that Ceballos expressed his views inside his office, rather than publicly, and that the memo

5

concerned the subject matter of his employment, are not
dispositive.  *Id*.  The Supreme Court ruled:

> The controlling factor in Ceballos' case is
> that his expressions were made pursuant to
> his duties as a calendar deputy ... That
> consideration - the fact that Ceballos spoke
> as a prosecutor fulfilling a responsibility
> to advise his supervisor about how best to
> proceed with a pending case - distinguishes
> Ceballos' case from those in which the First
> Amendment provides protection against
> discipline.  We hold that when public
> employees make statements pursuant to their
> official duties, the employees are not
> speaking as citizens for First Amendment
> purposes, and the Constitution does not
> insulate their communications from employer
> discipline.
>
> Ceballos wrote his disposition memo because
> that is part of what he, as a calendar
> deputy, was employed to do.  It is immaterial
> whether he experienced some personal
> gratification from writing the memo; his
> First Amendment rights do not depend on his
> job satisfaction.  The significant point is
> that the memo was written pursuant to
> Ceballos' official duties.  Restricting
> speech that owes its existence to a public
> employee's professional responsibilities does
> not infringe any liberties the employee might
> have enjoyed as a private citizen.  It simply
> reflects the exercise of employer control
> over what the employer has commissioned or
> created ....
>
> Ceballos did not act as a citizen when he
> went about conducting his daily professional
> activities, such as supervising attorneys,
> investigating charges, and preparing filings.
> In the same way he did not speak as a citizen
> by writing a memo that addressed the proper
> disposition of a pending criminal case.  When
> he went to work and performed the tasks he
> was paid to perform, Ceballos acted as a
> government employee.  The fact that his
> duties sometimes required him to speak or
> write does not mean his supervisors were
> prohibited from evaluating his performance.

6

*Id.* at 1960.   The Supreme Court concluded:

> Proper application of our precedents thus leads to the conclusion that the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities. Because Ceballos' memo falls into this category, his allegation of unconstitutional retaliation must fail.
>
> ... [T]he parties in this case do not dispute that Ceballos wrote his disposition memo pursuant to his employment duties.  We thus have no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate.  We reject, however, the suggestion that employers can restrict employees' rights by creating excessively broad job descriptions ... The proper inquiry is a practical one.  Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that concluding the task is within the scope of the employee's professional duties for First Amendment purposes.
>
> ...
>
> We reject ... the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties.  Our precedents do not support the existence of a constitutional cause of action behind every statement a public employee makes in the course of doing his or her job.

*Id.* at 1961-1962.

In *Freitag v. Ayers*, 468 F.3d 528 (9th Cir.2006), *cert. denied*, 127 S.Ct. 1918 (2007), the Ninth Circuit addressed whether a female corrections officer engaged in constitutionally

7

protected speech in light of *Ceballos*.   468 F.3d at 542-546.
Following her termination, Freitag alleged *inter alia* that she
was terminated in retaliation for her exercise of First Amendment
rights.   The jury was instructed that examples of speech
protected by the First Amendment included:

> (a) Reporting sexually hostile inmate conduct
> to agents of the California Department of
> Corrections, either formally or informally;
>
> (b) Documenting Pelican Bay State Prison's
> responses or failures to respond to
> Plaintiff's reports of sexually hostile
> inmate conduct;
>
> (c) Informing Cal Terhune, Director of the
> California Department of Corrections, of
> either the inmates' sexually hostile conduct
> or of Pelican Bay State Prison's responses or
> failures to respond;
>
> (d) Informing State Senator Richard Polanco
> either of sexually hostile conduct or of the
> Pelican Bay State Prison's responses or
> failures to respond;
>
> (e) Reporting either the sexually hostile
> conduct or Pelican State Prison's responses
> or failures to respond to the Office of the
> Inspector General; or
>
> (f) Cooperation with the investigation
> conducted by the Office of the Inspector
> General.

468 F.3d at 544.   The Ninth Circuit concluded, following
*Ceballos*, that Freitag's letters to Senator Polanco and her
written and oral communications with the Inspector General, all
of which related to the sexual abuse she and other female
correctional officers suffered at Pelican Bay State Prison, were
made as a citizen on a matter of public concern.   *Id.* at 545-546.

8

With regard to Freitag's internal reports of inmate sexual misconduct and documentation of the prison's failures to respond, the Ninth Circuit concluded:

> [I]t is clear that, under *Ceballos*, such activity is *not* constitutionally protected. For purposes of the First Amendment, Freitag submitted those reports as part of her official duties as a correctional officer and thus not in her capacity as a citizen.

*Id.* Because the record did not establish whether correctional officers were expected to air complaints concerning the conditions in their prisons all the way up to the Director of the CDCR, the Ninth Circuit remanded that issue to the district court for further consideration. *Id.*

Using this guidance, the December 23, 1996 PAL memorandum relating to alleged racial harassment by Police Activity League (PAL) volunteers at a PAL event was not written by Plaintiff as a citizen and that it was written pursuant to Plaintiff's official duties. The evidence presented to the Court establishes as a matter of law that Plaintiff wrote the memorandum as "the post advisor and advocate for the Explorer Youth", that "this memo shall serve as formal documentation and notification of the incident and events, as required under law re racial harassment", that "the conduct is also expressly forbidden per blue book", and that Plaintiff has "earnestly and respectfully carried out my duties as Post Advisor and always do so in a manner which reflects credit upon the Department and consistent with Department guidelines and mission goals". Plaintiff's memo

requested that the Department take steps to rectify the situation.  Defendants' motions for summary judgment are GRANTED with regard to the December 23, 1996 PAL memorandum in Count One.

With regard to the 1996 Year End Report regarding the Explorer program authored by Plaintiff on January 10, 1997, the record establishes that Plaintiff was summarizing the accomplishments of the program he was running as a member of the Police Department and as Explorer Post Advisor, assigned to the explorer program and discussed present staffing and future growth of the Explorer program.  Plaintiff prepared the report because the preceding Explorer Post Advisor had prepared such a report. Plaintiff sent the report to his chain of command.  As a matter of law, Plaintiff did not prepare the 1996 Year End Report acting as a citizen, but as part of his duties as a police officer assigned to oversee a Police Department program.  Defendants' motions for summary judgment are GRANTED with regard to the 1996 Year End Report in Count One.

With regard to the Mata reports, the record establishes that Plaintiff was transferred from patrol duty on July 15, 1996 to the position of Explorer Post Advisor because the previous advisor, Richard Mata, was suspended due to allegations of sexual misconduct with minors.  At the time of Plaintiff's transfer, the Internal Affairs division of the Police Department had commenced an investigation of the allegations against Mata.  Shortly after he became the Explorer Post Advisor, Internal Affairs' representatives told Plaintiff that additional victims would

likely surface.  Plaintiff was instructed by Internal Affairs to provide a written memorandum to Internal Affairs and his chain of command which set forth the name and information provided by any additional victims, but not to, himself, interview the victim and conduct any investigation.  Internal Affairs also directed Plaintiff to disregard any request by his chain of command not to document the information in writing and to inform his chain of command that the directive to submit a written memorandum to Internal Affairs was made by then Chief of Police Ed Winchester. In July/August 1996, after Plaintiff learned additional information relating to Mata, Plaintiff provided a written memorandum to Internal Affairs as well as his chain of command.

Plaintiff was instructed by his chain of command not to document in writing any more information about Mata, and not to report it to anyone except his chain of command.  The compelled non-reporting of suspected criminal conduct resulting in employment discrimination under color of law, cannot be conduct unredressable under the Civil Rights Act by law enforcement employees.  This disputed conduct is forced nondisclosure.  It is not part of the employer's business and survive summary judgment as it cannot be decided as a matter of law such conduct is not protected under the First Amendment.  The court will consider all evidence on this issue at trial to made the final ruling on the Mata "speech."  Defendants' motions for summary judgment are DENIED with regard to the Mata reports in Count One.

With regard to Plaintiff's testimony in 2002 before the

Civil Service Commission, there is evidence that, in January 2001, the City provided a promotional opportunity for Police Sergeant; that, in March 2001, a "practical phase" for the promotion exam was implemented which was graded at 50% of an applicant's final score; and that, after the testing was completed, some applicants complained that the testing conditions were tainted and filed grievances, which culminated in a hearing before the Civil Service Commission.  There is evidence that Plaintiff learned that some candidates were given the answers prior to taking the practical phase, which Plaintiff disclosed to the attorney representing the applicants; and that Plaintiff and his wife were subpoenaed to testify about this misconduct in the Civil Service Commission hearing.

This evidence, if established at trial, demonstrates that Plaintiff was not providing information and testifying in the Civil Service Commission proceedings as part of his official duties but, rather as a citizen.  Defendants' motions for summary judgment are DENIED with regard to the 2002 Civil Service Commission Hearing testimony in Count One.[1]

With regard to Plaintiff's speech that was made as a citizen and not as part of his official duties, in order to be protected speech under the First Amendment, the speech must express a matter of public concern.

---

[1]These rulings do not preclude introduction of evidence of supervisors' conduct allegedly asking Plaintiff to engage in unlawful activities.

Whether Plaintiff's speech addressed a matter of public concern is a question of law. *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 924 (9th Cir.2004), *cert. denied,* 544 U.S. 975 (2005). As explained in *Pool v. VanRheen*, 297 F.3d 899, 906 (9th Cir.2002):

> Though the United States Supreme Court has not articulated a precise definition of public concern, it has stated that '[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.' ... Speech that is necessary or appropriate to enable citizens to make informed decisions about the operation of their government is of public concern, while speech by public employees addressing individual personnel disputes and grievances is not.

Here, exposure of corruption and/or favoritism within the police department about improper favoritism and cronyism in employment promotions and advancement in the workplace are matters of public concern.

> 2. Adverse Employment Actions and Causation.

Genuine issues of material fact preclude summary judgment on the elements of adverse employment actions and whether Plaintiff's speech was a substantial or motivating factor for the adverse employment actions.

> B. Qualified Immunity.

Government officials who perform discretionary functions are entitled to qualified immunity from liability under Section 1983 only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

13

reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). This test necessitates a two-part analysis: (1) whether the law governing the official's conduct was clearly established, and (2) whether, given this clearly established standard, a reasonable official could believe that his conduct was lawful. *Biggs v. Best & Krieger*, 189 F.3d 989, 994 (9th Cir.1999).

The Supreme Court established in 1972 that a public employee has a First Amendment right to speak on matters of public concern and that retaliation by a public employer because of that exercise of the First Amendment right is unconstitutional. *See Pickering v. Board of Education*, 391 U.S. 563 (1968).

However, with regard to the second prong, where qualified immunity in favor of Defendants depends on disputed issues of fact in their favor, summary judgment on the ground of qualified immunity is not appropriate. *See Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir.2003), *cert. denied sub nom. Scarrot v. Wilkins*, 543 U.S. 811 (2004). Here, there are disputed issues of fact as to each individual defendant as to their "retaliation" against Plaintiff to destroy his career as a Fresno police officer. Defendants' motions for summary judgment on the issue of qualified immunity are DENIED.

C. Liability of City of Fresno.

The City of Fresno also moves for summary judgment on Count One pursuant to *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978) and its progeny.

14

1      ***Monell*** authorizes direct suits against local government

2  units under 42 U.S.C. § 1983 where "the action that is alleged to

3  be unconstitutional implements or executes a policy statement,

4  ordinance, regulation, or decision officially adopted and

5  promulgated by that body's officers."  436 U.S. at 690-691.

6  "Moreover, ... local governments ... may be sued for

7  constitutional deprivations visited pursuant to governmental

8  'custom' even though such a custom has not received formal

9  approval through the body's official decisionmaking channels."

10 *Id.*  Since "Congress did not intend municipalities to be held

11 liable unless action pursuant to official municipal policy of

12 some nature caused a constitutional tort[,] ... a municipality

13 cannot be held labile solely because it employs a tortfesor - or,

14 in other words, a municipality cannot be held liable under § 1983

15 on a respondeat superior theory."  *Id.* at 691.  A municipality

16 will be liable under Section 1983 only if "the municipality

17 itself causes the constitutional violation at issue."  *Canton v.*

18 *Harris*, 489 U.S. 378, 385 (1989).  In order to assert a *Monell*

19 claim, plaintiff must establish: (1) a violation of

20 constitutional rights occurred; (2) the existence of a municipal

21 policy or custom; and (3) a causal nexus between (1) and (2).

22 *Canton, id.* at 385-386; *see also City of Los Angeles v. Heller*,

23 475 U.S. 796, 799 (1986)("If a person has suffered no

24 constitutional injury at the hands of the individual police

25 officer, the fact that the departmental regulations might have

26 authorized the use of constitutionally excessive force is quite

1   beside the point.").

2       Plaintiff argues that the City's motion for summary judgment

3   must be denied because of evidence that Defendant Enmark, a

4   Deputy Chief with the ultimate authority to suspend Plaintiff,

5   made the  decision to suspend Plaintiff pending a fitness

6   examination.

7       Plaintiff relies on *City of St. Louis v. Praprotnik*, 485

8   U.S. 112 (1988) and *Pembauer v. City of Cincinnati,* 475 U.S. 469

9   (1986).  These Supreme Court decisions are discussed in *Los*

10  *Angeles Police Protective League v. Gates*, 907 F.2d 879, 889 (9th

11  Cir.1990):

12              To show that the City had a policy which
                deprived Gibson of his constitutional rights,
13              he may rely on the actions and decisions of
                the city employees who had the final
14              decisionmaking authority on the issue in
                question.  *City of St. Louis v. Praprotnik,*
15              485 U.S. 112 ... (1988).  Furthermore, a
                single action by the final decisionmaker may
16              be sufficient to establish that a
                municipality has a policy that infringes on a
17              person's constitutional rights.  *Id.; see*
                *also Pembauer v. City of Cincinnati,* 475 U.S.
18              469 ... (1986).

19  The question of who is the final policymaker is one of state law

20  and is a question of law for the trial court to decide.  As

21  explained in *Jett v. Dallas Independent School Dist.*, 491 U.S.

22  701, 737 (1989):

23              Last term in *St. Louis v. Praprotnik* ... we
                attempted a clarification of tools a federal
24              court should employ in determining whether
                policymaking authority lies for purposes of §
25              1983.  In *Praprotnik*, the plurality
                reaffirmed the teachings of our prior cases
26              to the effect that 'whether a particular

official has "final policymaking authority is
a question of *state* law.' ... As with other
questions of state law relevant to the
application of federal law, the
identification of those officials whose
decisions represent the official policy of
the local government unit is itself a legal
question to be resolved by the trial judge
*before* the case is submitted to the jury.
Reviewing the relevant legal materials,
including state and local positive law, as
well as '"custom and usage"' having the force
of law,' ... the trial judge must identify
those officials or governmental bodies with
final policymaking authority for the local
governmental actor concerning the action
alleged to have caused the particular
constitutional or statutory violation at
issue.  Once these officials who have the
power to make official policy on a particular
issue have been identified, it is for the
jury to determine whether *their* decisions
have caused the deprivation of rights at
issue by policies which affirmatively command
that it occur ..., or by acquiescence in a
longstanding practice or custom which
constitutes the 'standard operating
procedure' of the local governmental entity
....

In support of imposing liability on the City of Fresno
Plaintiff refers to the deposition testimony of Defendant Enmark
that he had sole discretion with respect to suspending employees
pending fitness determinations.  "An official may be found to
have been delegated final policymaking authority where 'the
official's discretionary decision is [not] "constrained by
policies not of that official's making" and ... [not] "subject to
review by the municipality's authorized policymakers.'" *Ulrich v.
City and County of San Francisco*, 308 F.3d 968, 986 (9th
Cir.2002), citing *Christie v. Iopa*, 176 F.3d 1231, 1236-1237 (9th
Cir.1999).

1    Here, given Enmark's high ranking position as a Deputy Chief

2    and the City's failure to provide contrary evidence, the matter

3    cannot be decided as a matter of law.   The motion is DENIED as to

4    the City.

5    III.   **Count Two - Violation of California Labor Code §**

6    **1102.5 Against Defendant City of Fresno**.

7    It is undisputed that Plaintiff did not file a claim for

8    violation of California Labor Code § 1102.5 as required by

9    California Labor Code §§ 98.6 and 98.7.   Plaintiff's argument

10   that exhaustion of such claim is not required by the Labor Code

11   is without merit.   *Gutierrez v. RWD Technologies, Inc.*, 279

12   F.Supp.2d 1223 (E.D.Cal.2003).

13   In addition, the record establishes that Plaintiff was

14   placed on paid administrative leave on March 1, 2004 but did not

15   file a claim against the City under the California Government

16   Tort Claims Act until November 2, 2004.   The presentation of a

17   claim pursuant to the Tort Claims Act is a separate, additional

18   prerequisite to commencing an action against a local public

19   entity and is not a substitute for the exhaustion of an

20   administrative remedy.   *Richards v. Department of Alcoholic*

21   *Beverage Control*, 139 Cal.App.4th 142, 162 (2005).

22   However, even if the tort claim could substitute for the

23   administrative exhaustion required by the California Labor Code,

24   Plaintiff's tort claim was untimely.   A claim against a public

25   entity must be presented not later than six months after the

26   accrual of the cause of action.   California Government Code §

18

911.2.   Under California Government Code § 945.4, presentation of a timely claim is a condition precedent to the commencement of suit against a public entity.  *See Munoz v. State of California*, 33 Cal.App.4th 1767, 1777 (1995).  For purposes of calculating this time limit, the date on which an action accrues is the date upon which it would be deemed to have accrued under the applicable statute of limitations.  California Government Code § 901.  As a general rule, the date of accrual is the date the plaintiff incurred injury as a result of the defendant's alleged wrongful act or omission.  *See Loehr v. Ventura County Community College Dist.*, 147 Cal.App.3d 1071, 1078 (1970); *see also Romano v. Rockwell Internat., Inc.*, 14 Cal.4th 479, 503 (1996)("[C]ause of action for wrongful discharge in violation of public policy accrues at the time of termination of employment").  Here, Plaintiff's alleged injury, placement on paid administrative leave in retaliation for his whistleblowing activities, occurred on March 1, 2004.  Plaintiff's argument at the hearing that this claim did not accrue until he was reinstated ignores the standards governing accrual of a cause of action and does not create a genuine issue of material fact on the issue of timeliness of his government tort claim.

No excuse is offered for Plaintiff's failure to timely meet the jurisdictional requirement of the Tort Claim Act.  No facts to justify equitable tolling are offered.

Summary Judgment for the City of Fresno on Count Two is

1 GRANTED.[2]

2     IV.   <u>Count Three - Violations of California Government Code</u>

3 <u>§ 53298</u>.

4     Because summary judgment has been granted with respect to

5 Defendants Jerry Dyer, the only Defendants against whom this

6 cause of action is alleged are Roger Enmark and Michael Guthrie.

7     Plaintiff did not timely file a claim pursuant to the

8 California Government Tort Claims Act. *See discussion supra*.

9     Plaintiff also did not comply with the requirements of

10 California Government Code § 53297.

11     California Government Code § 53297 provides in pertinent

12 part:

13         (a) An employee ... shall have the right to
        file a complaint with the local agency within

14         60 days of the date of the act or event which
        is the subject of the complaint.

15

16         (b) Prior to filing a written complaint
        pursuant to this article, the employee shall

17         first make a good faith effort to exhaust all
        available administrative remedies. The 60-

18         day time limit specified in subdivision (a)
        shall be extended by the amount of time

19         actually utilized by the employee in pursuing
        available administrative remedies.

20         (c) A complaint pursuant to this article
        shall be filed in accordance with the locally

21         adopted administrative procedure. If there
        is no administrative procedure, the complaint

22         shall be filed with the governing body.

23         (d) All complaints brought by employees under
        this article shall be filed under penalty of

24

_____

25     [2]Because of this ruling, it is unnecessary to address the
26 other grounds for summary judgment asserted with respect to Count
Two.

1          perjury.

2   California Government Code § 53298 provides in pertinent part:

3          (a) No local agency officer, manager, or
           supervisor shall take a reprisal action
4          against any employee ... who files a
           complaint pursuant to Section 53297.

5   California Government Code § 53298.5 provides that an officer,

6   manager, or supervisor who violates Section 53298 with malicious

7   intent is punishable by fine and imprisonment and by discipline

8   as provided by local personnel rules and regulations, and

9   individual liability for monetary damages, including punitive

10  damages.

11         California Government Code § 53296 sets forth applicable

12  definitions and provides in pertinent part:

13         (c) 'Disclosure of information' means the
14         written provision of evidence regarding gross
           mismanagement or a significant waste of
15         funds, an abuse of authority, or a
           substantial and specific danger to public
16         health or safety.

17         (d) 'Complaint' means any written document
           containing a disclosure of information as
18         specified in subdivision (c).

19         It is undisputed that Plaintiff's complaints were not filed

20  under penalty of perjury.  Plaintiff's argument that the

21  Government Code does not require that a complaint be filed under

22  penalty of perjury, but only that a complaint "itself is <u>received</u>

23  under penalty of perjury", completely ignores the express

24  language of the statute.  Plaintiff cites no legislative history

25  or case law supporting his construction of the statute.  Such

26  construction is not sustainable under the plain meaning rule of

                                  21

statutory construction.  *See People v. Canty*, 32 Cal.4th 1266, 1276-1277 (2004):

> Our first task is to examine the language of
> the statute ... giving the words their usual,
> ordinary meaning ... If the language is clear
> and unambiguous, we follow the plain meaning
> of the measure ... '[T]he plain meaning rule
> does not prohibit a court from determining
> whether the literal meaning of a measure
> comports with its purpose or whether such a
> construction of one provision is consistent
> with other provisions of the statute ....
>
> The language is construed in the context of
> the statute as a whole and the overall
> statutory scheme, and we give 'significance
> to every word, phrase, sentence, and part of
> an act in furtherance of the legislative
> purpose ....' ... The intent of the law
> prevails over the letter of the law, and 'the
> letter will, if possible, be so read as to
> conform to the spirit of the act ....' ....
>
> 'If the Legislature has provided an express
> definition of a term, that definition
> ordinarily is binding on the courts.' ....

California Code of Civil Procedure § 2015.5 provides in pertinent part:

> Whenever under any law of this state or under
> any rule, regulation, order or requirement
> made pursuant to the law of this state, any
> matter is required or permitted to be
> supported, evidenced, established, or proved
> by sworn statement, declaration,
> verification, certificate, oath or affidavit,
> in writing of the person making the same
> (other than a deposition, or an oath of
> office, or an oath required to be taken
> before a specified official other than a
> notary public), such matter may with like
> force and effect be supported, evidenced,
> established or proved by the unsworn
> statement, declaration, verification, or
> certificate, in writing of such person which
> recites that it is certified or declared by
> him or her to be true under penalty of

22

```
1         perjury, is subscribed by him or her, and
          (1), if it is executed within this state,
2         states the date and place of execution ...
          The certification or declaration may be in
3         substantially the following form:

4         (a) If executed within this state:

5         'I certify (or declare) under penalty of
          perjury that the following is true and
6         correct':

7         _____    _____
          (Date and Place)                (Signature)
8
```

Thus, the plain meaning of § 53297(d), when coupled with

Section 2015.5, clearly expresses the legislative intent that

whistleblower retaliation complaints be filed by the employee

under penalty of perjury.  There is nothing in that the statute

from which it may be inferred that this requirement is satisfied

if the employee's complaint is "received under penalty of

perjury", a concept in any event that does not make sense.

Further, the purpose for the requirement of filing the complaint

under penalty of perjury is obvious from the severe penalties

that may be imposed on the offending officer, manager or

supervisor.  The obvious intent of the statute is to assure the

truth of the assertions in a § 53297(d) complaint.

In addition, Plaintiff's second alleged complaint in 2003

under this statutory scheme is admitted by Plaintiff to have been

oral.  Section 53296(d) defines a complaint as "any written

document containing a disclosure of information as specified in

subdivision (c)."  Plaintiff's argument that this requirement was

satisfied because his oral complaint was reduced to writing after

1  it was investigated and the Plaintiff and two other witnesses

2  were interviewed, i.e., that the 2003 oral complaint was reduced

3  to writing through the course of the investigation, is without

4  merit.

5      Plaintiff argued that he was advised by employees of the

6  Department that his complaints were received pursuant to Section

7  53298.  This does not satisfy the requirements of law and cannot

8  create grounds for estoppel on which Plaintiff could have relied.

9  The evidence on which Plaintiff relies does not support this

10  inference and does not negate summary judgment for Defendants.[3]

11                          **CONCLUSION**

12      For the reasons stated above and at the hearing on July 31,

13  2007:

14      1.  Defendants Jerry Dyer and Greg Garner's motions for

15  summary judgment are GRANTED;

16      2.  Defendants Mary West, Michael Guthrie, Roger Enmark and

17  City of Fresno's motions for summary judgment are GRANTED IN PART

18  AND DENIED IN PART.

19      IT IS SO ORDERED.

20  Dated:   **August 13, 2007**              **/s/ Oliver W. Wanger**
                                        UNITED STATES DISTRICT JUDGE

21

22

23

24

25  _____

26      [3]Because of this ruling, it is unnecessary to address the
    other grounds asserted for summary judgment on Count Three.